# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Robert E. TAYLOR
## Yeoman Third Class (E-4), U.S. Coast Guard

## CGCMS 24265

## Docket No. 1207

## 31 March 2005

Special Court-Martial convened by Commanding Officer, Enlisted Personnel, Thirteenth Coast Guard District. Tried at Seattle, Washington, on 18 – 19 December 2003.

| | |
|---|---|
| Military Judge: | CDR Frederick W. Tucher, USCG |
| Trial Counsel: | LCDR Jason R. Hamilton, USCG |
| Assistant Trial Counsel: | LT Melanie A. Bell, USCG |
| Detailed Defense Counsel: | LT Mark H. Herrington, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT Sandra J. Miracle, USCG |

## BEFORE
## PANEL ONE
## BAUM, KANTOR, & FELICETTI
Appellate Military Judges

FELICETTI, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to a pretrial agreement, Appellant entered pleas of guilty to the following offenses: one specification of dereliction of duty by willfully failing to use his Government Travel Card for only official government travel business in violation of Article 92, Uniform Code of Military Justice (UCMJ); three specifications of false official statements in violation of Article 107, UCMJ; one specification of making a false claim against the United States in violation of Article 132, UCMJ; and one specification of dishonorable failure to pay a lawful debt in violation of Article 134, UCMJ. The military judge accepted Appellant's

pleas, entered findings of guilty to those offenses, and sentenced Appellant to confinement for one hundred days, reduction to paygrade E-1, and a bad-conduct discharge. The Convening Authority approved the sentence as adjudged. The pretrial agreement had no effect on the sentence.

Before this Court, Appellant has assigned two errors.

> I. Appellant's plea to willful dereliction of duty by failing to use his government travel card only for official purposes is improvident because the military judge failed to resolve inconsistencies between appellant's statements and his guilty plea, failed to elicit facts sufficient to support a plea of guilty, and failed to define the defense of inability.

> II. Appellant's plea to dishonorable failure to pay a just debt is improvident because the military judge failed to elicit facts from appellant to establish that his conduct was dishonorable, and failed to resolve inconsistencies between appellant's statements and his guilty plea.

**Facts**

The record of trial presents the following uncontroverted facts. Sometime in March 2003, Appellant was required to apply for what is now called a "Government Individually Billed Commercial Travel Charge Card" (hereinafter travel card). During the application process, an instructing petty officer told Appellant the travel card was only for official purposes. Appellant signed some sort of paperwork, not included in the record, restating the admonition to use the credit card only for official purposes and notifying Appellant he was subject to disciplinary action if he used the travel card without orders. Appellant received no other instruction regarding the travel card. While the program is governed by a twenty-eight page Commandant Instruction, COMDTINST 4600.14A, Appellant never read the instruction or was provided an opportunity to read it. It does not appear he was even aware of the Instruction prior to trial.

A government travel card was issued in Appellant's name by a civilian bank, CitiBank, sometime in early April 2003.  The travel card was marked with the words "for official government travel only."  Appellant appears to have used Training Center Petaluma as his billing address.  Appellant had no other credit card and did not maintain a checking account.  Based on the instruction received at the training center, Appellant believed he could use the travel card whenever he was under temporary additional duty (TAD) orders or permanent change of station (PCS) travel orders.

Appellant executed PCS orders to Port Angeles, Washington on or about 19 April 2003.  Prior to departing Petaluma, California, Appellant left a mail forwarding address with the training center, thinking he would receive his travel card statements.  He did not notify CitiBank of his new duty station or make any specific effort, beyond leaving a general mail forwarding address, to ensure the training center forwarded the Citibank credit card bills.

Appellant's car broke down in route to Port Angeles, WA, and Appellant rented a car using the travel card.  He used the rental car to report to his new duty station, on time, after taking some of his authorized travel time to visit friends in Victoria, Canada, as previously planned.  He used the travel card to pay for hotel and meal expenses while in Canada.

Appellant reported to his unit in Port Angeles on or about 23 April 2003.  He continued using his travel card for gasoline and meals in Port Angeles, WA, and a hotel room during a liberty visit to Victoria, Canada on 4 May 2003.  He was not under any form of travel orders during this period.

Appellant executed short-notice TAD orders to the Thirteenth Coast Guard District on 5 May 2003.  The orders were issued as no-cost orders.  He remained in a TAD status until sometime in November 2003.  During this period,

he used the travel card to pay for meals when the galley was closed and gasoline for his car.

Appellant did not receive any credit card statements until on or about 1 October 2003 when CitiBank learned of his new duty station and called him about his now overdue bill. He made no effort during the period from April – October to notify CitiBank of his new address or to pay the outstanding bill.

Appellant returned CitiBank's call sometime in early to mid October, updated his billing address, said he would pay the debt, and obtained information on how to do so. Appellant did not have a checking account so the bank suggested a cash transfer via Western Union and offered to make other payment arrangements, such as partial payments. Appellant made no effort to repay any part of the debt despite having enough funds available for at least some partial payments. Appellant did not contact CitiBank to make alternate arrangements for payment and ignored his monthly statements that began arriving in October.

## Assignment I

Appellant's first assignment asserts defects or inconsistencies in Appellant's guilty plea. To reject a guilty plea on appeal, we must find that the record shows a "'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

Appellant pled guilty to a willful dereliction of duty for failing to use his travel card for only official government travel purposes. The offense of dereliction in the performance of one's duties consists of three elements: That the accused (1) had certain duties; (2) knew or reasonably should have known of those duties; and (3) was derelict in the performance of those duties through willfulness, negligence, or culpable inefficiency. *See* Manual for Courts-Martial (MCM), Part IV, ¶ 16.b.(3), United States (2002 edition). A "derelict" act or omission is one which comprises either nonperformance or faulty

performance of a specified military duty. *See* MCM, Part IV, ¶ 16.c.(3)(c); *United States v. Lawson,* 36 M.J. 415 (C.M.A.1993).

Appellant's travel card use occurred during three distinct periods during 2003: 15 April to 22 April, 23 April to 4 May, and 5 May to 11 June. Appellant admitted during the providence inquiry that he used the travel card for normal travel expenses such as a rental car, meals, gasoline, and lodging. The total amount charged to the travel card was $1,166.42. He also admitted taking an indirect route during the PCS transfer to Port Angeles, WA, and that this deviation, and associated travel card charges, was unrelated to official business. Appellant also admitted that, upon further reflection, he did not believe he was authorized to use the travel card while on no-cost TAD orders. Upon our initial reading of the record, these statements appear to support Appellant's guilty plea to willful dereliction of duty. After several readings of Appellant's confusing testimony, and taking judicial notice of regulations not brought to the attention of the trial judge, however, we note some important inconsistencies between parts of Appellant's plea and his testimony.

Appellant testified during the plea inquiry that at the time of the credit charges he believed the travel card was for travel-related expenses whenever he was under TAD or PCS orders. This belief was based upon military instruction from a designated superior petty officer sometime in March 2003. When asked to explain official use in his own words, Appellant replied: "Official use is using the card doing *(sic)* travel or TAD purposes, sir." R. at vol. I, 53. When asked if he was aware of any other authorized purposes for using the card, Appellant replied: "Travel. On orders of travel from one station to another permanent duty station, sir." R. at vol. I, 53. He later explained that he signed "a paper stating the fact of if you use the government card, that you are liable to the UCMJ if you use it without -- without orders." R. at vol. I, 56. Later, he repeated that an official purpose equated to "[d]oing my TAD time," R. at vol. I, 62, and that he could use his travel card "for gasoline or meals if I needed, since I was still in a TAD status." R. at vol. I, 76. On several other occasions, Appellant repeated his

understanding that proper use of the travel card was status – based. He was permitted to use the card for travel-related expenses whenever he was in a TAD or PCS transfer status.

Later, after stumbling during the providence inquiry and consulting with his defense counsel, Appellant began labeling the credit charges as unofficial. Yet, he struggled at times to articulate why certain charges were unauthorized and the record shows an evolution in Appellant's answers as he tries to satisfy the judge. For example, when pressed on inconsistencies in his testimony concerning the no-cost TAD from 5 May 2003 to 11 June 2003, Appellant stated he did not realize he would not be submitting a travel claim. "But now after I, you know, think about it, I realize that, you know, I was -- there were no costs and the charge to the card shouldn't have occurred." R. at vol. I, 89-90. The military judge followed up and Appellant said he knew but was not sure, at the time, that he should not use the card while on no-cost orders. "But now I'm pretty sure, sir, after thinking about it, that I should not have, you know -- that there were no-cost orders and that the card -- using the card wasn't applicable." R. at vol. I, 90. The military judge continued to question if Appellant knew he shouldn't use the travel card and Appellant subsequently provided some "yes sir" answers. In the end, however, his description of the training provided by his command remained unchanged along with Appellant's original answers, in his own words, that official use equaled use while under TAD or PCS orders. With the benefit of a full record and unlimited time to assemble and review a neat chronology from Appellant's confusing testimony, we find significant conflicts between Appellant's guilty plea and his testimony, at least with respect to the periods 15 to 22 April 2003 and 5 May 2003 to 11 June 2003.

Additionally, Appellant's command provided incomplete and misleading training on Appellant's travel card duty, according to his uncontested testimony. Appellant, a junior enlisted member, was entitled to rely on his command for an accurate description of his travel card duties. His duty, therefore, was to restrict all travel card use to travel-related expenses during periods under TAD or PCS orders. He cannot be held to the higher standard unless there is evidence he knew or should have known of the applicable regulation at COMDTINST 4600.14A. There is no such evidence in the record since

neither the trial nor defense counsel brought this regulation to the attention of the military judge.  Moreover, Appellant was under travel orders during the periods 15 to 22 April 2003 and 5 May 2003 to 11 June 2003 and only used the card for normal travel expenses.

Finally, Appellant's conduct from 15 to 22 April 2003 and 5 May 2003 to 11 June 2003 does not appear to actually violate the Coast Guard's travel card policy, at least after the Government is held to the defective training provided Appellant.  According to the Government, Appellant misused the travel card because he did not go directly from Petaluma, CA, to Port Angeles, WA, while executing PCS orders and, therefore, incurred unofficial travel card charges.   He also is said to have incurred unofficial charges during no-cost TAD since he would not be reimbursed for these travel expenses.   We have taken judicial notice of COMDTINST 4600.14A, which Appellant had never been exposed to.  That regulation, which controls the use of Government Travel Cards, does not actually prohibit travel card use while on no-cost TAD orders.  Thus, Appellant's conclusion, upon further reflection, that it was inappropriate to use the card while on no-cost TAD is factually incorrect.  COMDTINST 4600.14A also does not mandate the most direct, or expeditious, PCS travel.  We have been unable to locate any such policy in a Coast Guard Instruction.  Our understanding of the service custom is that Coast Guard personnel are free to visit family or friends during PCS travel, or linger in a given place along the route, provided they report on time.  Travel expenses incurred during deviations from the most direct or expeditious route are no less legitimate, although the Government reimburses travelers based on the direct distance traveled.  Appellant, therefore, was not prohibited from visiting friends in Canada during his PCS transfer or incurring travel-related expenses during this side-trip.

Given these three discrepancies, we cannot affirm a conviction for dereliction of duty during the periods 15 to 22 April 2003 and 5 May 2003 to 11 June 2003.  Appellant did, however, use the travel card during one period when he was not under PCS or TAD travel orders, from 23 April 2003 to 4 May 2003.  Appellant's guilty plea for travel card charges during this period is consistent with his reasonable subjective understanding of

his duties, and COMDTINST 4600.14A, so we will affirm only this portion of the specification.

## Assignment Two

Appellant pled guilty to dishonorably failing to pay a just debt between 10 July 2003 and 1 October 2003. In reviewing this conviction, we are presented with the issue of what quantum of evidence is sufficient to establish that the behavior of the accused was dishonorable, as opposed to simply negligent. MCM Pt. IV, ¶ 68.b.(4) and ¶ 68.c. As stated before, to reject a guilty plea on appeal, we must find that the record shows a "'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

In *United States v. Bullman,* 56 M.J. 377 (C.A.A.F. 2002), the Court of Appeals for the Armed Forces reiterated that negligent failure to pay a debt is not culpable conduct. *Bullman*, 56 M.J. at 381. Instead, the failure to pay must be "characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude." 56 M.J. at 382; MCM, Part IV, ¶ 71.c. See also *United States v. Burris,* 59 M.J. 700, 703 (C.G.Ct.Crim.App. 2004).

In *United States v. Hughes*, 59 M.J. 948 (C.G.Ct.Crim.App. 2004), *aff'd on recons.* 60 M.J. 509 (2004), the guilty plea was affirmed because the military judge defined the term "dishonorable" as it applied to non-payment of a debt and properly described the elements. The accused, a Lieutenant Commander, was aware that a dishonorable failure to pay must be more than mere negligence. He understood the elements and definitions, and admitted that those elements and definitions taken together correctly described his actions. The accused "also admitted he 'just filed' bills as he received them, and paid 'not very many,' of them." *Hughes*, 59 M.J. at 952. He also admitted that he "deliberately chose not to pay the bill" and "just ignored" his creditor. 59 M.J. at 952. "[I]f they would call, I would tell them I wasn't home, I wouldn't take the call or said I wasn't home." *Id*. at 952.

While the Appellant was properly instructed as in *Hughes* and admitted the elements and definitions described his actions, the facts in this case are significantly different, at least during the period of charged misconduct which ended on 1 October 2003. Appellant, a newly promoted E-4 with less than two years of service, transferred to a new duty station in April 2003, leaving a mail forwarding address. Appellant expected to receive his travel card statements. He did not, however, provide his creditor a new mailing address or make any specific effort to obtain the travel card statements from his old unit. When the credit card statements failed to arrive, Appellant thought about contacting the bank but didn't follow through. He offered no excuse for failing to do so and described his attitude toward notifying the creditor of his new address as indifferent.

We believe Appellant's acts through 1 October 2003 amount to simple negligence, that is the absence of due care. He did not follow through on the initial, apparently ineffective, mail forwarding notice or his later thoughts about contacting the creditor. While irresponsible, Appellant's failure to take more assertive action does not establish conduct that can be described as "characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude." MCM Pt. IV, ¶ 71.c. Therefore, we cannot affirm Charge VI.

**Decision**

In light of the foregoing, after review of the record pursuant to Article 66, UCMJ, the finding of guilty of dereliction of duty, Charge II, is affirmed; however, only so much of the dates alleged in the specification as includes the period 23 April 2003 to 4 May 2003 is affirmed. Findings of guilty for dereliction during other periods are set aside. The findings of guilty of Charge VI and its specification are also set aside. The remaining findings of guilty approved below are affirmed. We now reassess the sentence in light of the reduced guilty findings. In so doing, we may affirm only so much of the sentence as we believe the military judge would have adjudged in the absence of the error we are now correcting; if we are unable to determine what that would have been, we must order a rehearing on sentence. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

We find the changed findings do not impact the sentence. The affirmed findings of guilty include dereliction of duty, three false official statements, and a false claim against the United States for over $1,700. The false claim included both written and verbal fabrications. Two of Appellant's false statements involved a faked racial incident. One made to the local police included a racially threatening note written by Appellant that he claimed to have found on his car. His third false statement claimed that his mother was living nearby, ill with active cancer. All these false statements were designed to manipulate the Coast Guard into transferring Appellant from Port Angeles,WA to Seattle, WA. We have little doubt that the military judge would have adjudged the same sentence. Moreover, upon reassessment, we have determined that the sentence approved by the Convening Authority is appropriate and should be approved. Accordingly, the sentence, as approved below, is affirmed.

Chief Judge BAUM and Judge KANTOR concur.



For the Court,


Roy Shannon Jr.
Clerk of the Court