# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

### UNITED STATES

#### v.

### Jesse C. HUNTER,
### Machinery Technician Third Class (E-4), U.S. Coast Guard

### CGCMS 24298

### Docket No. 1232

### 23 January 2007

Special Court-Martial convened by Commanding Officer, U.S. Coast Guard Cutter MACKINAW (WAGB-83). Tried at Cheboygan, Michigan, on 18 November 2004.

| | |
|---|---|
| Military Judge: | CDR Stephen P. McCleary, USCG |
| Trial Counsel: | LCDR Amy E. Kovac, USCG |
| Defense Counsel: | LT Kathryn Tinich, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT D. Sean Baer, USCGR |

### BEFORE
### PANEL THREE
### BAUM, KANTOR, & McCLELLAND
### Appellate Military Judges

McCLELLAND, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of the following offenses: three specifications of failure to go to his appointed place of duty, in violation of Article 86, Uniform Code of Military Justice (UCMJ); one specification of willful dereliction of duty by making unauthorized charges to a Government credit card and by failing to make payments on that card, in violation of Article 92, UCMJ; one specification of larceny of a motorcycle, in violation of Article 121, UCMJ; and one specification of dishonorable failure to pay a debt, in violation of Article 134, UCMJ.

The military judge sentenced Appellant to a bad-conduct discharge, confinement for eight months, and reduction to E-1. The Convening Authority approved only so much of the sentence as

includes a bad-conduct discharge, reduction to E-2, and confinement for eight months, but suspended confinement in excess of 180 days for the period of twelve months from the date of the Convening Authority's action. Although the pretrial agreement provided that the execution of all confinement in excess of 120 days would be suspended for a period of twelve months from the date of the Convening Authority's action, the Convening Authority partially withdrew the sentence limitation due to Appellant's misconduct. Appellant waived a R.C.M. 1109 hearing to determine whether the alleged misconduct was committed, in exchange for the Convening Authority's agreement not to impose more than sixty days of additional confinement and not to take further action upon the suspected misconduct. Automatic forfeitures were deferred and waived.

Before this Court, Appellant has assigned two errors: (1) that Appellant's pleas were improvident because the military judge failed to ensure that Appellant understood the meaning and effect of each condition of the pretrial agreement, and (2) that Appellant's plea to a dishonorable failure to pay a just debt (Charge IV) is improvident because the military judge misadvised Appellant of the elements of the offense and failed to elicit facts sufficient to establish that his conduct was dishonorable. We heard oral argument on the first assignment of error on 14 July 2005.

### Misconduct Provisions in Pretrial Agreement

Appellant complains that the military judge failed to inquire into whether Appellant understood the misconduct provisions in his pretrial agreement, and asserts that he was prejudiced by that failure when it was applied, causing him to serve an additional two months of confinement.

Appellant's pretrial agreement, which he and his counsel signed on 16 November 2004, two days before the trial, provided for approval of a punitive discharge, disapproval of any reduction below the paygrade of E-2, and suspension of confinement in excess of 120 days. The agreement provided that if Appellant engaged in misconduct at any time after signing the pretrial agreement and before completing the sentence, including any suspension, the Convening Authority was entitled to take certain actions. If the Convening Authority acted on the misconduct after Appellant's guilty pleas were accepted but before the Convening Authority took action under R.C.M. 1107, the Convening Authority could set aside the sentence limitations, after affording Appellant a hearing "substantially similar to the hearing required by Article 72, UCMJ, and the

2

procedures based on the level of adjudged punishment set forth in R.C.M. 1109(d), (e), (f), or (g)".[1] (Appellate Ex. VIII at 3.)

The military judge conducted an inquiry on the pretrial agreement, but the record of trial reveals no inquiry on the misconduct provisions of the pretrial agreement.[2]

Upon entry to Naval Brig Norfolk pursuant to the court-martial sentence to confinement for eight months, apparently Appellant was found to be in possession of stolen or misappropriated government property, and a routine urine sample tested positive for marijuana use. On 11 February 2005, defense counsel submitted a written "Offer to waive 1107 Hearing" offering Appellant's waiver of a hearing and agreement to serve an additional sixty days confinement that would otherwise have been suspended, in exchange for the Convening Authority's agreement "not to pursue charges for drug use or possession or larceny that are currently known or suspected by the command." A four-page document prepared on DD Form 455[3] reflects the Convening Authority's 15 February 2005 acceptance of the offer, and the Convening Authority's action dated 8 March 2005 implements it, suspending confinement in excess of 180 days rather than the 120 days provided for by the pretrial agreement.

R.C.M. 910(f)(4) requires that if a plea agreement exists, the military judge "shall inquire to ensure: (A) That the accused understands the agreement; and (B) That the parties agree to the terms

---

[1] Note that R.C.M. 1109 allows for vacation of suspension "based on a violation of the conditions of suspension which occurs within the period of suspension." R.C.M. 1109(b)(1), Manual for Courts-Martial (MCM), United States (2005 ed.) (although the 2002 edition of the MCM was in effect at the time of the offenses resulting in the charges and at the time of trial, the versions of the relevant provisions in both the 2002 and 2005 editions are identical unless otherwise stated). Hence the misconduct provisions of the instant pretrial agreement gave the Convening Authority more flexibility compared with the basic scheme of a suspended sentence, that is, the option of responding to Appellant's new misconduct, if any, within a broader period of time without initiating a new proceeding under the UCMJ. This is permissible under R.C.M. 705(c)(2)(D), but see *United States v. Bulla*, 58 M.J. 715 (C.G.Ct.Crim.App. 2003), for discussion of possible limitations, which are not implicated in this case.

[2] Of the five-page "Pretrial Agreement (Part I)," the first two pages set forth the pleas to be entered and several standard provisions. The third page sets forth the misconduct provisions. The fourth page sets forth several concessions by Appellant, including a restitution undertaking. The fifth page is the signature page. The military judge appears to have assumed that all of the first three pages are covered by the Trial Guide, which he carefully followed. In fact, much but not all of the standard provisions on the first two pages are covered in the Trial Guide. He gave attention to most of the fourth page, and thoroughly discussed the restitution provision, but omitted mention of the provision concerning non-objection to service record documents during pre-sentencing. Military judges need to be more careful when determining which provisions of a pretrial agreement need to be discussed in addition to the inquiry provided in the Trial Guide. We have raised this caution in numerous cases in the past, *e.g. United States v. Sheehan*, 62 M.J. 568, 570 (C.G.Ct.Crim.App. 2005), and seven cases cited therein.

of the agreement." An inquiry that fails to ensure that the accused understands the terms of the agreement falls short of that requirement. *United States v. Felder*, 59 M.J. 444, 445 (C.A.A.F. 2004). To obtain relief for such a failure, Article 59(a), UCMJ, burdens an appellant to demonstrate material prejudice to a substantial right. *Id.* at 446.

We hold that the failure to specifically inquire into Appellant's understanding of the misconduct provisions of the pretrial agreement was error. The question follows, has Appellant shown prejudice to a substantial right?

The inquiry required by R.C.M. 910(f)(4) is a part of the inquiry into the providence of the accused's pleas, under R.C.M. 910(c)-(e) as well as R.C.M. 910(f). The obvious point of the inquiry is to ensure that an accused fully understands the ramifications of the pretrial agreement as they may play out in the accused's case, and hence to make a fully informed decision as to whether or not to plead guilty under the conditions of the agreement. In other words, the substantial right with which we are concerned is the right to make a fully informed decision as to whether or not to plead guilty. Prejudice, therefore, results when an accused, based on a misunderstanding, makes a decision that is different from the decision he would have made had it not been for the misunderstanding.

In *United States v. Gonzalez*, 61 M.J. 633, 636 (C.G.Ct.Crim.App. 2005), this Court posed the question about prejudice thus: "In particular, would the Appellant have chosen to change his plea to not guilty and demand a contested trial had he understood the correct application of Articles 58a and 58b, UCMJ, to special courts-martial conducted by the U.S. Coast Guard?" The question was whether a proper understanding would have changed Gonzalez's decision in court.[4] This Court's conclusion was negative. *Id.*

At the time of the providence inquiry by the military judge in this case, Appellant surely was aware of his conduct that, if discovered, could trigger the misconduct provisions. He needed to understand those provisions; such understanding might have led him to withdraw his guilty pleas because of the distinct possibility that the sentence limitation would be nullified by his misconduct.

---

[3] The form bears the title "Report of Proceedings to vacate suspension of a general court-martial sentence or of a special court-martial sentence including a bad-conduct discharge under Article 72, UCMJ, and R.C.M. 1109."

The fact that he did not withdraw from the agreement does not necessarily justify the conclusion that he did not understand.[5] However, unlike *Gonzalez*, in this case we cannot say that if Appellant had originally misunderstood and had then been given a correct understanding, he would have been unlikely to have changed his pleas to not guilty. We must, therefore, consider whether, by the end of the providence inquiry, Appellant was laboring under a misunderstanding.

Later events may provide a clue to his understanding. The time came when the misconduct provisions posed a real threat, apparently leading Appellant and his counsel to consider negotiating a post-trial agreement that would limit the consequences of his misconduct to two extra months of confinement instead of the four months that were at risk under the pretrial agreement.[6] Again, Appellant needed to understand those provisions in order to make a decision – and surely did, since their application was no longer theoretical. At this point, any disparity between Appellant's previous understanding and his new understanding in light of the facts should have occasioned a complaint. Appellant's offer dated 11 February 2005 could be viewed as either an acknowledgment that he had understood all along or a waiver of the issue, but for one problem. Nowhere in the post-trial documents of this case does Appellant's signature appear. In view of the absence of Appellant's signature from the post-trial agreement, we hesitate to draw any inferences from it in the Government's favor.

We are mindful, however, that even before this Court, Appellant has not claimed that he did not understand the misconduct provisions of his pretrial agreement. In truth, their basic import is not difficult to understand.[7] We see no reason to believe that Appellant did not, during the trial, understand the misconduct provisions to an extent that would make a difference. We conclude that Appellant has not shown prejudice from the military judge's failure to discuss the misconduct provisions of the pretrial agreement.

---

[4] Implicitly, this Court assumed that Gonzalez did not have a correct understanding.
[5] It is common for a consensual search to lead to the discovery of obviously incriminating evidence of which the consenter must have been aware.
[6] Such a post-trial agreement is permissible. *United States v. Dawson*, 51 M.J. 411 (C.A.A.F. 1999).

**Dishonorable Failure to Pay Debt**

The specification under Charge IV, for violating Article 134, UCMJ, reads as follows:

> In that Machinery Technician Third Class Jesse C. Hunter, U.S. Coast Guard, USCGC MACKINAW, Cheboygan, Michigan, on active duty, being indebted to, his landlord, Mr. Roger Kopernik in the sum of approximately $1800.00 for rent of an apartment, which amount was due and payable in part on divers occasions from on or about September 2003 and due in full on or about September 2004, did, at or near, Cheboygan, Michigan, from approximately July 2004 to September 2004, dishonorably fail to pay this debt.

The Stipulation of Fact (Prosecution Ex. 1) establishes the following facts. Appellant rented premises from Mr. Kopernik on or about 14 September 2003, but failed to make some of the rent and utility payments under the lease. On or about 19 May 2004, Appellant and Mr. Kopernik signed an agreement in which Appellant agreed to pay the rent on time and make payments on the arrearages. Appellant "failed to make all of the required payments as he agreed that he would." (Prosecution Ex. 1 at 4.) He was evicted in early October 2004, at which time Appellant owed Mr. Kopernik $1,806.16 in back rent and utilities.

During the providence inquiry, Appellant admitted the truth of the facts stipulated. The military judge also elicited from him that he was receiving his military pay during the entire period, that it was a conscious and knowing decision not to pay, that nothing prevented him from paying, that he could have paid the debt if he had wanted to, and that he believed his failure to pay the debt was dishonorable in that he had signed an agreement and did not fulfill it.

Appellant now complains that the military judge misstated the elements of the offense, implying that the September 2003 – 19 May 2004 time period was part of the offense. This complaint lacks merit. The military judge's rendition of the elements closely tracks the specification itself except for trivial word omissions which we do not believe could have misled Appellant. More substantively, he also complains that the military judge failed to elicit facts sufficient to show that his failure to pay was dishonorable.

---

[7] The relevant portion of the pretrial agreement is set forth in Appendix A to this opinion.

Before accepting a guilty plea, the military judge must establish a factual basis for the plea by questioning the accused. R.C.M. 910(e).

Part of Appellant's complaint is near-incredulity that the required factual basis could be found in the absence of more detail about the monthly rent and the payments actually made by Appellant. The providence inquiry for Charge IV is set forth in Appendix B to this opinion. It is true that details are scarce and the providence inquiry is formulaic and not especially convincing. Questioning that elicited details beyond the vague information in the Stipulation of Fact, instead of solely questions to be answered by yes or no, would have done much to establish a firm factual basis and verify that Appellant really understood what was going on and knew and understood what he was admitting. We previously pointed out the likely inadequacy of an inquiry that does not go beyond a bare-bones stipulation of fact in *United States v. Schrader*, 60 M.J. 830, 831 (C.G.Ct.Crim.App. 2005), where we said, "All military judges should remind themselves that such stipulations, without a more detailed inquiry, are not an adequate factual basis supporting guilt." However, the factual details elicited in this case, though minimal, are sufficient to fulfill the requirement, in our view. Military judges who take comfort in this result do so at their peril. We urge military judges to expand their inquiries beyond the boundaries of stipulations and generic lists of questions.

Appellant focuses his assertion of error on what he calls the absence of facts to establish that his failure to pay was attributable to more than negligence, citing *United States v. Burris*, 59 M.J. 700 (C.G.Ct.Crim.App. 2004), and *United States v. Taylor*, 61 M.J. 640 (C.G.Ct.Crim.App. 2005). "More than negligence in nonpayment is necessary. The failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations." MCM, Pt. II, ¶71.c.

Burris "stated that he simply could not pay his debts as they were due, and alluded to severe pay problems that left him unable to pay for basics." *Burris*, 59 M.J. at 703. This, combined with the fact that the meaning of "dishonorable" had not been explained to him, led this Court to find Burris's guilty pleas improvident. *Id.* at 704. Taylor failed to follow up when his credit card statements did not reach him at his new address. This Court found his conduct to be simple

negligence, while irresponsible, and his guilty plea, too, was held improvident. *Taylor*, 61 M.J. at 644.

Here, by contrast, Appellant admitted at trial that he could have paid, nothing prevented him, it was a conscious decision not to pay; he was receiving his military pay. We cannot agree with Appellant that this was no more than negligence. The landlord took the step of obtaining Appellant's written agreement in May 2004 to remedy what might previously have been thoughtless failures to pay. By September 2004, Appellant had failed his obligations under the May agreement to the tune of $1,800. We find that this amounted to distinctly culpable circumstances; his admittedly deliberate nonpayment was dishonorable under MCM, Pt. II, ¶71.c.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved and partially suspended below, are affirmed.

Judge KANTOR concurs.

BAUM, Chief Judge (concurring in part and dissenting in part):

I concur that the military judge erred in failing to specifically inquire into Appellant's understanding of the misconduct provisions of the pretrial agreement. A failure to inquire into any provision of a pretrial agreement is error. I dissent from the majority's conclusion that no prejudice from this error has been demonstrated.

Article 59(a), UCMJ, provides that a court-martial result "may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Under *United States v. Green*, 1 M.J. 453, 455-56 (C.M.A. 1976), *United States v. King*, 3 M.J. 458, 458-59 (C.M.A. 1977) (*citing United States v. Green*, 1 M.J. 453 (C.M.A. 1976)), and R.C.M. 910(f)(4), Appellant had a right to have the military judge ensure that he understood all the

terms of the pretrial agreement before his plea was accepted. It certainly cannot be said that the military judge ensured that Appellant understood the misconduct terms of his pretrial agreement, since he did not address those terms specifically. It may be that a separate discussion of a simple term of a pretrial agreement is not required, but this page-long set of terms cannot be called simple.

Following this flagrant error, the unexplained misconduct provisions were invoked, resulting in Appellant's confinement for two additional months. This distinguishes the case from *United States v. Felder*, 59 M.J. 444 (C.A.A.F. 2004), *United States v. Walters*, 51 M.J. 637 (C.G.Ct.Crim.App. 2005), and other cases where the unexplained provision did not ultimately affect the accused. In this case, a finding of no prejudice has no basis other than speculation. The majority relies on the absence of evidence of prejudice.[8] In my view, where an unexplained provision of a pretrial agreement has actually affected an accused, prejudice should be presumed in the absence of contrary evidence.

I would hold the guilty pleas improvident and set them aside.



For the Court,

Jane R. Lim
Clerk of the Court

---

[8] The majority suggests that Appellant may have waived the error by offering to enter into a post-trial agreement. A finding of waiver of an issue is inappropriate in the absence of acknowledgment of the issue.

## Appendix A

The misconduct provisions of the pretrial agreement are as follows:

13.  I fully understand that if I engage in misconduct after signing this pretrial agreement, I may forfeit the benefits of this agreement.  Misconduct means any act or failure to act that violates the Uniform Code of Military Justice or any act or failure to act by which I fail to comply with this agreement.  If I engage in misconduct at any time, between when I sign this pretrial agreement and the time that I complete the sentence approved by the convening authority, including any period of probation or period in which a sentence component is suspended, the convening authority will be able to act on this agreement based on that misconduct.  The action the convening authority may take on this agreement depends on when the convening authority acts, if she chooses to act, not on when the misconduct occurs, so long as the misconduct occurs within the time frame governed by this provision.  There are three periods of time during which the convening authority may act on this agreement based on my misconduct:  (1) from the time convening authority and I sign this pretrial agreement until the time the military judge accepts my pleas; (2) from the time the military judge accepts my pleas until the convening authority takes her RCM 1107 action; and (3) from the time the convening authority takes her RCM 1107 action until I have completed serving my entire sentence (including any period of suspension or probation, if applicable) as finally approved and executed;

14.  That I understand that if, based on my misconduct, the convening authority acts on this agreement after s/he and I sign this pretrial agreement but before the military judge accepts my pleas, the convening authority may use such misconduct as grounds to unilaterally withdraw from this pretrial agreement. Should the convening authority do so, I understand that the pretrial agreement would thereby become null and void, and both I and the convening authority would be relieved of all obligations and responsibilities that either of us would have been required to meet by the terms of this pretrial agreement;

15.  That I further understand that if, based on my misconduct, the convening authority acts on this agreement after the time the military judge accepts my pleas but before the time the convening authority takes her RCM 1107 action, such misconduct may be the basis for setting aside the sentencing provisions of the pretrial agreement. Before setting aside the sentencing provisions of this agreement, however, the convening authority shall afford me a hearing, substantially similar to the hearing required by Article 72, UCMJ, and the procedures based on the level of adjudged punishment set forth in RCM 1109(d), (e), (f), or (g), to determine whether the misconduct occurred and whether I committed the misconduct; and;

16.  That I further understand that if based on my misconduct, the convening authority acts on this agreement after the time the convening authority takes her RCM 1107 action, but before I have completed serving the entire sentence (including any period of suspension or probation, if applicable) as finally approved and executed, the convening authority may, after compliance with the hearing procedures set forth in

RCM 1109, vacate any periods of suspension agreed to in this pretrial agreement or as otherwise approved by the convening authority.

(Appellate Ex. VIII at 3.)

**Appendix B**

The providence inquiry on the specification under Article 134, UCMJ, was as follows:

MJ: Okay. At this point, Petty Officer Hunter, I'm going to ask you about Charge IV, Specification 2. You had plead guilty to the offense of dishonorably failing to pay a debt. The elements of that offense are as follows: Element one, that you were indebted to Roger Kopernik in the amount of $1,806.16 for rent. Element two, that this debt became due and payable on numerous occasions on or about September 2003 and due in full in September 2004. Element three, that at Cheboygan, Michigan from on or about July 2004 to on or about September 2004, while the debt was still due and payable, you dishonorably failed to pay this debt. And, four, that under the circumstances your conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

And there are a couple of definitions I need to review with you regarding this offense. First, conduct prejudicial to good order and discipline is conduct which causes a reasonably direct and obvious injury to good order and discipline. Service discrediting conduct is conduct which tends to harm the reputation of the service and lower it in public esteem.

Second, the failure to pay the debt must have been the result of more than mere negligence; that is, the absence of due care. The failure to pay must be dishonorable. A failure to pay is dishonorable if it is fraudulent, deceitful, a willful evasion, in bad faith, deliberate, based on false promises or results from a grossly indifferent attitude towards one's just obligations.

Do you understand all those elements and the definitions as I've read them to you?

ACC: Yes, sir.

MJ: Do you need me to review any of them with you?

ACC: No, sir.

MJ: Please turn to page 4 of the stipulation of fact. The stipulation states that you secured a lease with Mr. Roger Kopernik of Cheboygan, Michigan, who was the landlord for premises located at 628 Duncan Avenue, Cheboygan, Michigan, on or about 14 September 2003. Is that true?

ACC: Yes, sir.

MJ: It states that you signed the lease acknowledging a specific amount due each month to Mr. Kopernik, and that this amount was to be remitted before the 15th of each month. Is that true?

ACC: Yes, sir.

MJ:  And during the course of the lease the stipulation states that you failed to make complete rental payments or pay the utilities as outlined in the rental agreement and agreed upon with your signature.  Is that true?

ACC:  Yes, sir.

MJ:  Okay.  In May 2004 Mr. Kopernik in an attempt to recoup his lost monies plus future timely rent payments entered into another agreement with you, which both you and he signed on or about May 19, 2004.  Is that true?

ACC:  Yes, sir.

MJ:  And that in this subsequent agreement you agreed to pay the rent on time plus prorated amounts of back rent and utilities that had been previously owed and not paid to Mr. Kopernik, and you failed to make all the required payments as you agreed in that agreement of 19 May.  Is that true?

ACC:  Yes, sir.

MJ:  The stipulation states that Mr. Kopernik was forced to go to court asking for your eviction, that the court granted Mr. Kopernik's request, and that you were provided formal notice and evicted in early October 2004.  Is that true?

ACC:  Yes, sir.

MJ:  And that at the time of your eviction you owed Mr. Kopernik $1,806.16 in back rent and utilities.  Is that true?

ACC:  Yes, sir.

MJ:  And the stipulation states that your failure to pay the rent and utility bills followed by the efforts required by Mr. Kopernik to obtain court orders to regain possession of the premises reflected poorly on the service and its members within the local community.  Is that true?

ACC:  Yes, sir.

MJ:  And the stipulation states that your failure to pay your voluntarily assumed rental debt brought discredit upon the service.  Is that true?

ACC:  Yes, sir.

MJ:  And, finally, it states that you were not forced or coerced into entering into either the original rental agreement or the subsequent revised payment agreement.  Is that true?

ACC:  Yes, sir.

MJ: You entered into both of them freely and voluntarily?

ACC: Yes, sir.

MJ: Keeping in mind the definitions that I've read to you previously about what constitutes dishonorable failure to pay a debt, after reviewing the information and going over this with your counsel, do you believe that your failure to pay the debt to Mr. Kopernik was dishonorable?

ACC: Yes, sir.

MJ: How?

ACC: In which I signed an agreement and I didn't fulfill it, which could lead him to believe —

MJ: And were you receiving your military pay during this entire period?

ACC: Yes, sir.

MJ: And did you consciously and knowingly make the decision to use your military pay for other expenses other than paying for this particular debt or keeping the money to yourself?

ACC: Yes, sir.

MJ: And was it your conscious and knowing decision not to pay your rent or to pay under the second agreement with Mr. Kopernik?

ACC: Yes, sir.

MJ: Did anyone or anything prevent you from paying the debt to Mr. Kopernik?

ACC: Can I have one second? Could you repeat your last question?

MJ: Sure. Did anyone or anything prevent you from paying the debt to Mr. Kopernik?

ACC: No, sir.

MJ: Could you have paid the debt to Mr. Kopernik if you had wanted to?

ACC: Yes, sir.

MJ: Petty Officer Hunter, do you recall the four elements of the offense and the definitions that I've read to you a few minutes ago?

ACC: Yes, sir.

MJ: Do you understand each of those elements and definitions?

ACC: Yes, sir.

MJ: Do you need me to review them with you again?

ACC: No, sir.

MJ: Do you understand by pleading guilty you admit that the elements accurately describe what happened?

ACC: Yes, sir.

MJ: Do the elements in Charge IV, Specification 2, in fact, accurately describe what happened?

ACC: Yes, sir.

MJ: Okay. Trial Counsel, do you have any other questions?

TC: Yes, sir. The Government wants you to pursue the fourth element under Article 134 regarding prejudice and bringing discredit to the service.

MJ: Okay. I can. I have not, just because I did go over what the — or, I'm sorry, the stipulation on page 5 had a specific discussion of that, but I can ask just to clarify.

Do you understand, Petty Officer Hunter, the definitions regarding prejudice to good order and discipline to service, and discrediting conduct that I had read to you a few minutes ago?

ACC: Yes, sir.

MJ: Do you need me to read them over to you again?

ACC: It would be helpful, sir.

MJ: Okay. Let me read them again. Conduct prejudicial to good order and discipline is conduct which causes a reasonably direct and obvious injury to good order and discipline. Service discrediting conduct is conduct which tends to harm the reputation of the service or lower it [in] public esteem.

Do you believe that your conduct was either to the prejudice of good order and discipline in the armed services or was of a nature to bring discredit upon the armed forces when you didn't pay your debt to Mr. Kopernik?

ACC: Yes, sir.

MJ: How?

ACC:  Because I had an obligation to pay.

MJ:  And is Mr. Kopernik —

ACC:  He's a civilian.

MJ:  He has no direct affiliation with the Coast Guard?

ACC:  Right.

MJ:  He's just a member of the local community?

ACC:  Yes, sir.

MJ:  And how do you think your failure to pay him would either be to the prejudice of good order and discipline or bring discredit on the armed forces?

ACC:  Because he was a civilian, and it could look through the eyes of other civilians in town that through my actions that other Coast Guard people don't pay their bills also.

MJ:  Trial counsel, do you have any other questions?

TC:  No, sir.  Thank you.

(R. at 51-58.)