UNITED STATES, Appellee

v.

Jesse C. HUNTER, Machinery Technician Third Class
U.S. Coast Guard, Appellant

No. 07-0386

Crim. App. No. 1232

United States Court of Appeals for the Armed Forces

Argued December 5, 2007

Decided January 11, 2008

RYAN, J., delivered the opinion of the Court, in which EFFRON,
C.J., and BAKER, ERDMANN, and STUCKY, JJ., joined.

<u>Counsel</u>

For Appellant:  Lieutenant Robert M. Pirone (argued); Lieutenant
Commander Nancy J. Truax (on brief).

For Appellee:  Lieutenant Commander Patrick M. Flynn (argued).

Military Judge:  Stephen McCleary

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Hunter, 07-0386/CG

Judge RYAN delivered the opinion of the Court.

Appellant was convicted at a special court-martial, pursuant to his pleas, of three specifications of failure to go to his appointed place of duty, one specification of willful dereliction of duty, one specification of larceny, and one specification of dishonorable failure to pay a just debt, in violation of Articles 86, 92, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 892, 921, 934 (2000). The military judge sentenced Appellant to a bad-conduct discharge, confinement for eight months, and reduction to E-1.

The convening authority approved the bad-conduct discharge, a reduction to E-2, confinement for eight months, and deferred and waived automatic forfeitures. Confinement in excess of 180 days was suspended for a period of twelve months from the date of the convening authority's action. The United States Coast Guard Court of Criminal Appeals affirmed the findings and sentence. United States v. Hunter, 64 M.J. 571, 575-76 (C.G. Ct. Crim. App. 2007).

We granted Appellant's petitions on the following issues:

I. WHETHER R.C.M. 705(c)(2)(D) PERMITS PRETRIAL MISCONDUCT TO FORM THE BASIS FOR A WITHDRAWAL FROM THE SENTENCING LIMITATION OF THE PRETRIAL AGREEMENT WHEN PRETRIAL MISCONDUCT, BY ITS VERY NATURE, CANNOT FALL WITHIN ANY PERIOD OF SUSPENSION AS REQUIRED BY R.C.M. 1109 SINCE THERE IS NO SENTENCE PRIOR TO TRIAL.

II. WHETHER APPELLANT'S PLEAS WERE IMPROVIDENT BECAUSE THE MILITARY JUDGE FAILED TO ENSURE THAT APPELLANT

2

> UNDERSTOOD THE MEANING AND EFFECT OF THE MISCONDUCT
> PROVISIONS IN THE PRETRIAL AGREEMENT, AND THE
> CONVENING AUTHORITY SUBSEQUENTLY WITHDREW FROM THE
> SENTENCING LIMITATION PORTION OF THE PRETRIAL
> AGREEMENT BASED ON PRETRIAL MISCONDUCT.[1]

We hold that, as long as the procedural protections set forth in R.C.M. 1109 are either followed or waived, a convening authority may withdraw before action from a pretrial agreement (PTA) when the accused violates conditions established pursuant to Rule for Courts-Martial (R.C.M.) 705(c)(2)(D).  We further hold that Appellant has failed to demonstrate material prejudice to a substantial right stemming from his plea colloquy; therefore he is not entitled to relief.  Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).  There is no evidence that Appellant misunderstood the meaning and effect of the misconduct provision within his PTA or that his understanding of it prejudiced his ability to make a fully informed decision to plead guilty.

## I.  Factual Background

The relevant facts for resolution of the granted issues are undisputed.  Appellant signed a PTA with the convening authority two days prior to trial.  Appellant agreed to plead guilty to the charged offenses before a military judge.  The convening authority agreed to disapprove any reduction below the pay grade E-2 and to suspend any confinement in excess of 120

---

[1] 65 M.J. 300 (C.A.A.F. 2007).

days for a period of twelve months from the date of the convening authority's action.

The PTA also covered the consequences of additional misconduct by Appellant after signing the PTA and before completing any sentence. It provided, inter alia, that if Appellant committed misconduct after signing the agreement and the convening authority acted on that misconduct after Appellant's guilty pleas were accepted but before the convening authority took action under R.C.M. 1107, the convening authority could set aside the sentence limitations, after affording Appellant a hearing "'substantially similar to the hearing required by Article 72, UCMJ, [10 U.S.C. § 872 (2000)], and the procedures based on the level of adjudged punishment set forth in R.C.M. 1109(d), (e), (f), or (g).'" Hunter, 64 M.J. at 572.

Two events lead to the instant appeal. First, the military judge did not discuss the misconduct provisions in the PTA with Appellant during the course of the providency inquiry. Second, before the convening authority acted on the adjudged sentence, Appellant was alleged to have committed misconduct. An inventory of Appellant's possessions upon entry to the brig led to accusations that he was in possession of government property that was either stolen or misappropriated. And a routine urinalysis administered to him upon entry to the brig tested positive for marijuana.

The convening authority gave notice that he intended to exercise the provision in the PTA that allowed a withdrawal from the sentencing limitation contained in the agreement due to Appellant's alleged misconduct.  Under the specific terms of his PTA, and by operation of R.C.M. 705 and R.C.M. 1109, Appellant was entitled to a hearing to determine whether the alleged misconduct occurred before the convening authority could withdraw from any portion of the sentencing limitation set forth in the PTA.

But Appellant waived his right to a R.C.M. 1109 hearing.[2] In exchange, the convening authority agreed that only the confinement portion of the sentence limitation contained in the PTA would be affected and further agreed not to take action on the additional alleged misconduct.  The ultimate effect of the above facts was that Appellant served sixty days of confinement that, but for the alleged misconduct, would otherwise have been suspended.

## II.  Discussion

Appellant argues that a misconduct provision in a PTA governing misconduct that occurs before the convening authority

---

[2] It was argued that this waiver of the R.C.M. 1109 hearing in exchange for sixty additional days of confinement was a new, post-trial, agreement under United States v. Dawson, 51 M.J. 411, 413 (C.A.A.F. 1999).  This is an incorrect characterization of the events that transpired subsequent to the convening authority's decision to enforce the misconduct provision in the pretrial agreement.

acts pursuant to R.C.M. 1107 is per se impermissible under R.C.M. 1109 because R.C.M. 1109 requires that the withdrawal be during the "period of suspension," or after R.C.M. 1107 action. Appellant asserts, therefore, that the convening authority breached his PTA by failing to suspend confinement in excess of 120 days, as required by that agreement when considered without reference to the misconduct provision contained therein. In addition, Appellant contends that his guilty plea was improvident because the PTA misconduct[3] provision was not explained to him by the military judge. For the reasons set forth below, we reject Appellant's arguments and affirm the decision of the Coast Guard Court of Criminal Appeals.

A. Intersection of R.C.M. 705 and R.C.M. 1109

Appellant accepts that his PTA authorized a withdrawal by the convening authority on the basis of misconduct that occurred prior to convening authority action. But he argues that this provision is unlawful because R.C.M. 705(c)(2)(D) and R.C.M. 1109, read together, do not permit misconduct that occurred prior to convening authority action to be used as the basis for

---

[3] We note that the granted issue and the party's briefs refer to "pretrial misconduct" and the "pretrial misconduct provision." Nothing in this type of case turns on whether the misconduct happened before or after trial. Rather, pursuant to the PTA, the pertinent inquiry is whether the convening authority acted on the sentence before or after the misconduct provision was enforced.

a withdrawal from the confinement limitation of a PTA. We disagree.

The interpretation of provisions of the R.C.M., and whether a term in a PTA violates the R.C.M., are questions of law that we review de novo. United States v. Tate, 64 M.J. 269, 271 (C.A.A.F. 2007). Ordinary rules of statutory construction apply in interpreting the R.C.M. United States v. Clark, 62 M.J. 195, 198 (C.A.A.F. 2005). We hold that R.C.M. 705(c)(2)(D)'s reference to R.C.M. 1109 requires that the procedural protections for a suspension and vacation proceeding under R.C.M. 1109 be extended to withdrawal from sentence limitations of a PTA based on allegations of misconduct.

Permissible conditions for a PTA are set forth explicitly in R.C.M. 705(c)(2). Subsection (D) of this rule specifically permits:

> (D) A promise to conform the accused's conduct to certain conditions of probation before action by the convening authority as well as during any period of suspension of the sentence, provided that the requirements of R.C.M. 1109 must be complied with before an alleged violation of such terms may relieve the convening authority of the obligation to fulfill the agreement . . . .

(emphasis added).

Of course, R.C.M. 1109 by its terms addresses the procedural requirements for "[v]acation of suspension of [a] sentence," not withdrawal from a sentence limitation in a PTA.

Appellant nonetheless argues that because R.C.M. 1109(b)(1) provides, in relevant part, that where a condition is violated "[v]acation shall be based on a violation of the conditions of suspension which occurs within the period of suspension," and because the misconduct in this case occurred before the sentence was acted on by the convening authority, it did not occur within the period of suspension. Accordingly, he asserts that the convening authority could not lawfully exercise the provision in the PTA that allowed withdrawal before the convening authority acted on the sentence.

This argument is unsupported by ordinary rules of statutory construction. First, Appellant's contention that R.C.M. 1109 prohibits PTAs concerning pretrial misconduct is directly counter to R.C.M. 705(c)(2)(D), which expressly provides for a PTA provision covering conduct "before action by the convening authority." We see no reason to read the R.C.M. in such a fashion as to create internal inconsistencies for the purpose of nullifying the rules as drafted by the President. See Loving v. United States, 517 U.S. 748, 773 (1996) (stating that the "President, acting in his constitutional office of Commander in Chief, had undoubted competency to prescribe" R.C.M. provisions); see also Liteky v. United States, 510 U.S. 540, 552 (1994) (eschewing a statutory interpretation that would have required a statute to "contradict itself"). The requirements of

R.C.M. 1109 referenced by R.C.M. 705(c)(2)(D) refer to how a vacation hearing should be carried out, not what event triggers the hearing.

Second, while R.C.M. 705(c)(2)(D) does incorporate the requirements of R.C.M. 1109 by reference, we decline to read this to mean that a misconduct provision can only justify withdrawal from sentence limitation portions of a PTA when the misconduct occurred after the convening authority takes action under R.C.M. 1107 and during the suspension period.  This reading is contextually unreasonable, especially when the provisions can be read to give effect to both.  See Williams v. Taylor, 529 U.S. 362 (2000) (discussing "the cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute").

In our view, while R.C.M. 705(c)(2)(D) could have been drafted more precisely, the plain import of its reference to R.C.M. 1109 is to require a convening authority to comply with the R.C.M. 1109 procedural protections before the benefit of a PTA can be withdrawn.  And while this Court has not expressly addressed this issue before, this has been, in fact, how the provisions have been interpreted together for some time.  United States v. Smith, 46 M.J. 263, 265 (C.A.A.F. 1997); United States v. Tester, 59 M.J. 644, 646 (A. Ct. Crim. App. 2003); United States v. Bulla, 58 M.J. 715, 721 (C.G. Ct. Crim. App. 2003);

United States v. Perlman, 44 M.J. 615, 616 (N-M. Ct. Crim. App. 1996); United States v. Kendra, 31 M.J. 846, 848 (N.M.C.M.R. 1990); see also Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app. 21 at A21-40 (2005 ed.). Moreover, this is precisely what Appellant's PTA provided for in this case.

The misconduct provision of Appellant's PTA complied with R.C.M. 705, and the convening authority did not violate the PTA by withdrawing from a portion of the sentencing limitation in light of Appellant's post-trial misconduct where Appellant waived the procedural protections to which he was otherwise entitled under R.C.M. 1109.

### B. The Providency of Appellant's Plea

The Court of Criminal Appeals held that the military judge legally erred in failing to explain the pretrial misconduct provision to Appellant prior to accepting his guilty plea, but, despite the error, Appellant was not entitled to relief because he failed to establish the material prejudice to a substantial right required under Article 59(a), UCMJ. Hunter, 64 M.J. at 573-74. We agree.

"Military law imposes an independent obligation on the military judge to ensure that the accused understands what he gives up because of his plea and the accused's consent to do so must be ascertained." United States v. Resch, 65 M.J. 233, 237

10

(C.A.A.F. 2007).  "The accused must know and understand not only the agreement's impact on the charges and specifications which bear on the plea . . . but also other terms of the agreement, including consequences of future misconduct or waiver of various rights."  United States v. Felder, 59 M.J. 444, 445 (C.A.A.F. 2004); see also United States v. Jones, 23 M.J. 305, 308 (C.M.A. 1987) (discussing this Court's willingness to strike down PTA clauses that "violate the institutional safeguards an accused has under the Uniform Code of Military Justice").

Reflecting these concerns, R.C.M. 910(f)(4) requires that where a plea agreement exists the military judge "shall inquire to ensure:  (A) That the accused understands the agreement; and (B) That the parties agree to the terms of the agreement."  This inquiry is part and parcel of the providence of an accuser's plea, and necessary to ensure that an accused is making a fully informed decision as to whether or not to plead guilty.  United States v. King, 3 M.J. 458, 458 (C.M.A. 1977).  And we have noted on more than one occasion that an inquiry that falls short of these requirements and fails to ensure the accused understands the terms of the agreement is error.  Felder, 59 M.J. at 445.

When, as in this case, an error is found, we will reject the providency of a plea only where the appellant demonstrates a "material prejudice to a substantial right."  Id. at 446 (citing

11

Article 59(a), UCMJ).  Not every error constitutes a material prejudice to a substantial right warranting relief under Article 59(a), UCMJ.  Id.

In this case, the substantial right that must be prejudiced is the right to make an informed decision to plead guilty.  Cf. United States v. Ginn, 47 M.J. 236, 247 (C.A.A.F. 1997) (stating that "the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea" in the context of an ineffective assistance of counsel case) (emphasis removed); see also Felder, 59 M.J. at 446 (holding that guilty plea need not be set aside where accused is not materially prejudiced by the failure to be questioned on a plea agreement provision); United States v. Simpson, 17 C.M.A. 44, 47, 37 C.M.R. 308, 311 (1967) (stating that there was no prejudice when there was nothing in the record that suggested either accused would have changed their plea, but for the error); United States v. Gonzalez, 61 M.J. 633, 636 (C.G. Ct. Crim. App. 2005) (finding an error exists when there is "a substantial likelihood that the [a]ppellant would have chosen to change his pleas to not guilty and demanded a contested trial").  Where there is "no evidence or representation before this Court that Appellant misunderstood the terms of his agreement, that

12

the operation of any term was frustrated, [or] that Appellant's participation in the agreement was anything other than wholly voluntary" we will not find prejudice. Felder, 59 M.J. at 446.

We agree with the Court of Criminal Appeals that Appellant has not alleged, and the record does not reflect, that Appellant was not able to make an informed decision whether to plead guilty because the provision in question was not explained to him by the military judge. Hunter, 64 M.J. at 574. Moreover, as noted by the Court of Criminal Appeals, Appellant's attorney negotiated with the convening authority to waive the R.C.M. 1109 hearing and increase his confinement based on the provision in question in exchange for an agreement not to proceed on the allegations of additional misconduct, rather than argue that he had never heard of, or did not understand, the provision.

Instead, Appellant argues he was prejudiced because, due to his subsequent misconduct, he spent sixty additional days in confinement that would otherwise have been suspended. This is not the prejudice we look for in the context of Article 59(a), UCMJ, where a PTA provision was not explained to an accused by the military judge. See Felder, 59 M.J. at 446.

Under the facts of this case, we find that Appellant's substantial rights were not prejudiced by the military judge's error in failing to explain the misconduct provision to him during the course of the providence inquiry.

13

## III.  Decision

The decision of the United States Coast Guard Court of Criminal Appeals is affirmed.