# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39150**

————————————

**UNITED STATES**
*Appellee*

v.

**Colton T. BALLANCE**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary
Decided 23 February 2018

————————————

*Military Judge:* Mark W. Milam (arraignment); Christopher A. Santoro.

*Approved sentence:* Dishonorable discharge, confinement for 34 years, and reduction to E-1. Sentence adjudged 12 July 2016 by GCM convened at Barksdale Air Force Base, Louisiana.

*For Appellant:* Lieutenant Colonel Nicholas W. McCue, USAF; Major Allen S. Abrams, USAF; Major Todd M. Swenson, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Tyler B. Musselman, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Captain Michael T. Bunnell, USAF; Gerald R. Bruce, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Judge MINK and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

JOHNSON, Senior Judge:

A general court-martial composed of a military judge found Appellant guilty, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of unpremeditated murder in violation of Article 118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918. The military judge sentenced Appellant to a dishonorable discharge, confinement for 34 years, and reduction to the grade of E-1. The convening authority approved the adjudged sentence[1] but waived mandatory forfeitures for six months for the benefit of Appellant's spouse and dependent child.

Appellant raises three issues for consideration on appeal: (1) Whether Appellant's guilty plea was improvident due to an inadequate factual basis inquiry by the military judge; (2) Whether Appellant's guilty plea was improvident because he received inaccurate pretrial advice regarding the convening authority's ability to disapprove the finding of guilt or the sentence; and (3) Whether Appellant's sentence is inappropriately severe. We find no error that materially prejudiced Appellant's substantial rights; accordingly, we affirm the findings and sentence.

## I. BACKGROUND

Appellant was assigned to the security forces squadron at Barksdale Air Force Base, Louisiana. He lived on base with his wife, EB, two-year-old stepson, WC, and infant daughter, BB. On the evening of 12 October 2015, Appellant took WC to the child's upstairs bedroom to put him to bed while EB rested downstairs with BB. After arriving in the bedroom, WC resisted being put to bed, which was not unusual. WC began crying, ignored Appellant's demands that he be quiet, and struck Appellant with his hand because he did not want to go to bed.

In response, Appellant put his hands around WC's neck and squeezed forcefully. When he withdrew his hands, WC was gasping for air. Appellant knew WC was having trouble breathing and that "something was wrong." However, instead of taking WC to a hospital or seeking assistance, Appellant went downstairs to watch television with EB. EB asked him why WC had been crying. Appellant responded that WC had not wanted to go to sleep, but said WC had quieted down after Appellant turned on the DVD player in the room to play WC's favorite movie.

Neither Appellant nor EB checked on WC later that night or the following morning before Appellant reported for duty at approximately 0500. Appellant

---

[1] The PTA provided the convening authority would approve no confinement in excess of 37 years and 6 months, with no other sentence limitation, and thus had no effect on the convening authority's ability to approve the adjudged sentence.

did not inform anyone of WC's condition or seek any assistance for WC before EB discovered WC's body at approximately 1100 that morning. EB checked on WC and found him face-down in his bed, cold, stiff, and completely unresponsive. Emergency responders were unable to revive him. The Bossier County Coroner's Office later determined, based on the condition of the body, WC likely died in the late evening of 12 October 2015 or early morning of 13 October 2015. An autopsy identified, among other injuries, abrasions to WC's neck and hemorrhaging within WC's neck muscles. The autopsy report identified neck injuries as the cause of death. Appellant admitted to agents of the Air Force Office of Special Investigations (AFOSI) that he squeezed WC's neck after going into an "uncontrollable" rage.

At trial, Appellant pleaded guilty pursuant to a PTA to WC's unpremeditated murder by means of strangling WC with his hands. In accordance with the PTA, Appellant agreed to and signed a stipulation of fact. The military judge conducted a paragraph-by-paragraph review of that stipulation with Appellant, who admitted its contents were true to the best of his knowledge and belief. The stipulation stated, *inter alia*, Appellant "placed his hands around [WC's] neck and squeezed forcefully. In doing so, he strangled [WC], squeezing and constricting [WC's] neck in a way that caused the child not to be able to breathe . . . ." The stipulation further recounted Appellant told the AFOSI agents that he

> noticed [WC] was limp and making an odd noise as though he was gasping for air. [Appellant] then covered [WC] with a blanket after laying him face-down on the bed. Neither [Appellant] nor [EB] ever placed [WC] face-down when putting [WC] to bed. By this time, [WC's] breathing had significantly decreased in frequency and he continued to gasp for air. [Appellant] started a movie on the television in the bedroom, and left [WC] lying face-down on the mattress as he left the room.

The stipulation further stated,

> [Appellant], an adult male, weighed approximately 220 lbs. [WC] weighed 20 lbs. The force of the 220-pound [Appellant] squeezing the neck of [WC's] 20-pound frame induced the pressure necessary to kill the child. [WC's] gasping and labored breathing were a clear result of strangulation.
>
> [WC] died on or about 12 October 2015. His death resulted directly from the act of [Appellant] in that he was strangled by [Appellant's] hands at or near Barksdale Air Force Base, Louisiana. The act of strangling [WC] was intentional on the part of [Appellant], inherently dangerous to [WC] and evinced a wanton

disregard for human life. [Appellant] knew that great bodily harm was a probable consequence of the act. The killing of [WC] by [Appellant] was unlawful in that it was done without legal justification or excuse.

After admitting the stipulation of fact, the military judge conducted a providence inquiry with Appellant.[2] The military judge advised that the elements of the offense to which Appellant pleaded guilty included the following:

One, that [WC] is dead;

Two, that his death resulted from [Appellant's] act of strangling him with [Appellant's] hands at or near Barksdale Air Force Base, Louisiana, on or about the 12th of October 2015;

Three, that [Appellant's] act was inherently dangerous to another, that is, one or more persons, and it evinced a wanton disregard for human life;

Four, that [Appellant] knew death or great bodily harm was a probable consequence of the act; and

Five, that [Appellant's] killing of [WC] was unlawful.

Appellant explained to the military judge how he committed the crime:

[WC] hit me, and I just lost it. I grabbed him by his neck and just choked him. . . . I don't recall exactly how long I had my hands on his neck; but know [sic] when I let go, he was gasping for air. I just laid him down, covered him up, turned on his favorite movie, hoping he would be okay. . . . I knew with the force I used and the fact that he was having trouble breathing that something was wrong.

The colloquy between the military judge continued and included the following exchanges:

ACC [Appellant]: As I'm walking into the room is when the slap occurred that sent me into an enraged anger; and at that time is when I – I actually placed him on the bed and placed my hands around his neck.

Afterwards, as soon as I realized what I was doing, I took my hands away. Step back. Begin to, you know, freak out, realizing the seriousness of the situation. I really didn't – I didn't know what to do. So in order to kind of make it – hope that nothing

---

[2] *See United States v. Care*, 18 C.M.A. 535 (C.M.A. 1969).

was wrong, I continued with the regular process of turning the movie on, tucking him in; and after that, I left the room to go back downstairs.

. . .

MJ [Military Judge]: Do you have a recollection of having your hands around [WC's] neck?

ACC: Yes, sir.

. . .

MJ: How serious did you think it was going to be? Did you know at the time he was likely to die or was dying?

ACC: I had no idea at the time he was passing away. I honestly thought he was just coming back from the actual incident that occurred.

. . .

MJ: As part of the stipulation as you prepared for the case today and as you look at the evidence, are you confident saying under oath that it was your act that resulted in [WC's] death?

ACC: Yes, Your Honor.

. . .

MJ: So let me ask one concluding question as a summary question: Do you believe and admit under oath that at or near Barksdale Air Force Base, Louisiana, on or about the 12th of October 2015, you murdered [WC] by strangling him with your hands?

ACC: Yes, Your Honor.

Counsel for both parties advised the military judge that they did not perceive any issue as to Appellant's mental capacity or mental responsibility for the offense, and that they believed the providence inquiry was adequate. The military judge reviewed the terms of Appellant's PTA offer with Appellant, and established that Appellant was satisfied with his counsel. The military judge accepted Appellant's plea and ultimately sentenced him to a dishonorable discharge, confinement for 34 years, and reduction to the grade of E-1.

## II. DISCUSSION

### A. Adequacy of the Providence Inquiry

#### 1. Law

A military judge's decision to accept an accused's guilty plea is reviewed for an abuse of discretion. *United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014). "The appellant bears the burden of establishing that the military judge abused that discretion, i.e., that the record shows a substantial basis in law or fact to question the plea." *United States v. Phillips*, 74 M.J. 20, 21–22 (C.A.A.F. 2015) (citing *Finch*, 73 M.J. at 148). A military judge abuses his discretion by accepting a guilty plea without an adequate factual basis to support the plea. *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) (citing *United States v. Inabinette*, 66 M.J. 320, 321–22 (C.A.A.F. 2008)). However, courts consider the facts contained in a properly-admitted stipulation of fact when assessing the adequacy of the factual basis supporting a guilty plea. *See United States v. Sweet*, 42 M.J. 183, 185–86 (C.A.A.F. 1995).

**2. Analysis**

Appellant was charged with murdering WC under the third clause of Article 118, UCMJ, that is, by unlawfully killing him when "engaged in an act that is inherently dangerous to another and evinces a wanton disregard of human life." 10 U.S.C. § 918(3). As the military judge explained to Appellant,

> the act must be intentional, but death or great bodily harm does not have to be the intended result. An act evinces a wanton disregard for human life when it is characterized by heedlessness of the probable consequences of the act and indifference to the likelihood of death or great bodily harm and demonstrates a total disregard for the known probable consequences of death or great bodily harm.

Appellant contends that the military judge failed to elicit from Appellant sufficient facts to demonstrate Appellant knew that death or great bodily harm was a probable consequence when he strangled WC. We are not persuaded.

The military judge reviewed the stipulation of fact with Appellant in some detail. In the course of that review, Appellant specifically agreed with the military judge's recitation of the stipulation of fact, specifically, that the strangulation was intentional and evinced a wanton disregard for human life and that Appellant knew great bodily harm was a probable consequence of that act. Apart from the stipulation, Appellant clearly admitted to strangling WC, a two-year-old child weighing 20 pounds, in a fit of rage. He clearly indicated he believed this unlawful act caused WC's death, a conclusion supported by the autopsy report attached to the stipulation of fact and by all the other evidence in this case. Moreover, Appellant told the military judge that after he withdrew his hands from WC's neck, he "knew *with the force [he] used* and the fact that [WC] was having trouble breathing that something was wrong."

It is true that Appellant consistently maintained that he did not *know* WC was dying when he left WC's room that night; however, such knowledge is not an element of the offense of which Appellant was convicted. What is required is that Appellant knew that death or great bodily harm was a probable consequence of Appellant's act of strangulation. The stipulation of fact that Appellant agreed to and signed, and which Appellant confirmed in person with the military judge, explained why great bodily harm was a probable consequence of Appellant's act, and affirmed Appellant knew that it was. Appellant did not contradict this knowledge during the providence inquiry. Considering the entirety of the factual record before the military judge, including the stipulation of fact and its attachments, we find no substantial basis to question the plea and no abuse of the military judge's "significant discretion" to decide to accept the plea. *Phillips*, 74 M.J. at 21 (citing *Inabinette*, 66 M.J. at 322).

## B. Advice Regarding Convening Authority Clemency Power

### 1. Additional Facts

On the day before trial, Appellant and each of the three trial defense counsel signed a five-page memorandum purporting to advise Appellant of his post-trial and appellate rights. The memorandum stated, *inter alia*, "The Convening Authority may approve the sentence adjudged, approve a lesser sentence, or disapprove the sentence entirely. The Convening Authority may also disapprove some or all of the findings of guilt."

At trial, prior to his announcement of the sentence, the military judge briefly addressed the memorandum with Appellant. Appellant confirmed that he had signed it, that he had discussed it with his lawyers, and that he had no questions for the military judge regarding his post-trial rights.

After trial, Appellant and one of his trial defense counsel were served with a copy of the staff judge advocate's recommendation to the convening authority and its attachments pursuant to Rule for Courts-Martial (R.C.M.) 1106(f). Appellant's counsel advised the staff judge advocate that Appellant would not be submitting any further matters for the convening authority's consideration pursuant to R.C.M. 1105.[3]

### 2. Law

As discussed above, a military judge's decision to accept an accused's guilty plea is reviewed for an abuse of discretion. *Finch*, 73 M.J. at 148. To prevail on appeal, the appellant must establish the record shows a substantial basis in

---

[3] The convening authority had previously granted Appellant's request that the mandatory forfeitures of pay and allowances be waived for six months for the benefit of EB and BB.

law or fact to question the providency of the plea. *Phillips*, 74 M.J. at 21–22. Appellate courts will not reject an appellant's guilty plea as improvident unless an error resulted in material prejudice to a substantial right. *United States v. Hunter*, 65 M.J. 399, 403 (C.A.A.F. 2008).

R.C.M. 1107(c) provides, *inter alia*, that a convening authority taking action on the results of a court-martial may not set aside a finding of guilty for an offense for which the maximum sentence to confinement exceeds two years or for which the adjudged sentence includes a dishonorable discharge or confinement for more than six months. R.C.M. 1107(d) provides, *inter alia*, that a convening authority generally may not disapprove an adjudged term of confinement in excess of six months or a dishonorable discharge, except upon a recommendation by trial counsel or in order to comply with the terms of a pretrial agreement. R.C.M. 1107(e) provides, *inter alia*, that a convening authority may not order a rehearing where the adjudged sentence includes a dishonorable discharge or confinement for more than six months.

**3. Analysis**

Appellant contends his guilty plea was not provident because he received inaccurate advice from trial defense counsel regarding the convening authority's ability to modify the findings and sentence. Appellant speculates that "[p]erhaps had he known that clemency would not have been an option," he "might have chosen to litigate his case with the hope of being convicted of involuntary manslaughter, the lesser included offense of murder." As a result, Appellant asks this court to set aside the findings of guilt and order a new trial. We decline to do so.

Without question, the written advisement of post-trial and appellate rights contained incorrect advice regarding the convening authority's power to modify the likely findings and sentence resulting from Appellant's guilty plea to murdering WC. Because Appellant was found guilty of murder in violation of Article 118, UCMJ, an offense punishable by confinement for life, and because he was sentenced to a dishonorable discharge and confinement for more than six months, the convening authority could neither set aside the finding, nor disapprove the dishonorable discharge or term of confinement, nor order a rehearing under R.C.M. 1107.

However, it is also clear Appellant has suffered no material prejudice to a substantial right. Despite the inaccurate clemency advice provided to Appellant, his right to make an informed decision to plead guilty was not otherwise

affected. *See Hunter*, 65 M.J. at 403.[4] Notwithstanding his speculation on appeal, Appellant has offered no declaration or other showing that, but for the erroneous advice, he would have elected to forego his PTA and to plead not guilty. *Cf. United States v. Ginn*, 47 M.J. 236, 247 (C.A.A.F. 1997) ("[The appellant] has not alleged and the record does not show that there *was a reasonable probability* that he would have changed his plea to not guilty if his defense counsel had properly investigated [witness statements] . . . ."). We are not persuaded by Appellant's assertion that he entered the PTA and pleaded guilty in reliance on the prospect that the convening authority might set aside his provident guilty plea to murdering his two-year-old stepson, reduce or disapprove his punitive discharge, or reduce his term of confinement below the maximum agreed upon in the PTA. Accordingly, we find the erroneous advice did not materially prejudice Appellant's right to make an informed decision regarding his plea, and he is not entitled to a new trial.

Although Appellant has raised this issue as a question of the providency of his plea, it also implicates the doctrine of ineffective assistance of counsel (IAC). Accordingly, we have evaluated Appellant's claim in light of the standard for constitutionally effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and utilizing the three-part test our superior court has established to evaluate allegations of IAC. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). For the reasons stated above, we find no reasonable probability of a different result but for the erroneous advice regarding post-trial rights. *Id.* Thus, Appellant is not entitled to relief on this basis either.

## C. Sentence Appropriateness

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (citing *United States v. Anderson*, 67 M.J. 703, 705

---

[4] We note that, as is typical, the military judge did not address the subject of post-trial rights with Appellant until the end of the court-martial, long after he had found Appellant's pleas provident and accepted them. Put another way, an accused's understanding of post-trial rights is not a subject that appellate courts have generally required a military judge to investigate before accepting a guilty plea as provident.

(A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 2. Analysis

Appellant bases his claim that his sentence is inappropriately severe in part on a comparison with sentences in other cases he describes as factually similar. Although these cases are not "closely related" to Appellant's, we acknowledge that we may compare these cases to consider the propriety of Appellant's sentence, although we are not required to do so. *See United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001); *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). However, unless the cases *are* closely related, "[t]he appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. LeBlanc*, 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)).

Most of the cases Appellant cites do not involve convictions for murder. *See Sauk*, 74 M.J. at 598 (involuntary manslaughter); *United States v. Robbins*, 52 M.J. 159, 159 (C.A.A.F. 1999) (involuntary manslaughter of fetus); *United States v. Nelson*, 52 M.J. 516, 517 (N.M. Ct. Crim. App. 1999) (involuntary manslaughter); *United States v. Martinez*, 48 M.J. 689, 690 (A. Ct. Crim. App. 1998) (involuntary manslaughter); *United States v. Box*, No. ACM 33487, 2001 CCA LEXIS 43, at *1 (A.F. Ct. Crim. App. 27 Feb. 2001) (unpub. op.) (involuntary manslaughter); *United States v. Martin*, 1990 CMR LEXIS 68, at *1 (A.F.C.M.R. 18 Jan. 1990) (unpub. op.) (involuntary manslaughter). The sole murder case Appellant does cite involved circumstances highly dissimilar to Appellant's case. *See United States v. Riley*, 47 M.J. 603, 605 (C.A.A.F. 1997). We do not find Appellant's comparisons persuasive.

Turning to the particulars of Appellant's case, he contends the military judge failed to adequately consider several circumstances that warrant a lesser punishment. First, Appellant points to the absence of any prior history of violence. Second, he argues the crime was the product of enormous stress resulting from his new role as a 21-year-old father to two young children, recovery from hip surgery, and working 12-hour shifts. Third, Appellant invites us to consider his difficult childhood and the absence of a father figure for much of his life. Finally, he points to support from his extended family as demonstrating strong rehabilitative potential. Appellant asks this court to reduce his term of confinement to 15 years.

Appellant faced the possibility of confinement for life without the possibility of parole. A military judge, having reviewed the evidence and received Appellant's unsworn statements, determined a term of 34 years in confinement

was appropriate. Appellant exhibited a wanton disregard for human life by strangling the helpless two-year-old stepson he was supposed to be tucking into bed. Having inflicted lethal injuries on the child, Appellant then extinguished any chance of WC's survival by leaving him face-down in his bed, failing to obtain any assistance, and portraying to WC's concerned mother that nothing was wrong. Having given individualized consideration to Appellant, the nature and seriousness of the offense, Appellant's record of service, and all other matters contained in the record of trial, we find his sentence is not inappropriately severe.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

JULIE L. ADAMS
Acting Deputy Clerk of the Court