# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

Before
**J.A. FISCHER, A.C. RUGH, T.H. CAMPBELL**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**EUGENE M. CARIE**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201600051**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 9 November 2015.
**Military Judge:** Col J.K. Carberry, USMC.
**Convening Authority:** Commanding Officer, 9th Communication Battalion, 1 Marine Expeditionary Force Headquarter Group, I Marine Expeditionary Force, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** LtCol D.R. Kazmier, USMC.
**For Appellant:** CAPT Bree Ermentrout, JAGC, USN.
**For Appellee:** LT Robert Miller, JAGC, USN; LT James Belforti, JAGC, USN.

**16 June 2016**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of one specification of conspiracy to import and distribute methylone, a Schedule I controlled substance; one specification of wrongfully importing methylone; and one specification of wrongfully distributing methylone in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 912a. The convening authority approved the adjudged sentence of six months' confinement, reduction to pay grade E-1, forfeiture of $600.00 pay per month for six months, and a bad-conduct discharge.

As the lone assignment of error, the appellant alleges the military judge's failure to conduct an adequate inquiry into the terms of his pretrial agreement (PTA) rendered his plea improvident. Specifically, the appellant focuses on the military judge's decision to not explain and discuss "obligations to testify and cooperate in future proceedings, and limitations on the calling of witnesses outside the local area."[1] He argues that we must set aside the findings and sentence in this case. We disagree.

## BACKGROUND

In the summer of 2013, the appellant conspired with a civilian friend to purchase methylone from a supplier in China so that his friend could sell the drugs. The appellant placed an online order for the drugs over the "dark web"[2] and provided his co-conspirator's address as the shipping locale. Law enforcement officials intercepted the package, and Naval Criminal Investigative Service (NCIS) agents contacted the appellant, who was later charged with the offenses discussed *supra*.

As part of the PTA, signed by the appellant on 27 May 2015 and accepted by the convening authority on 15 July 2015, the appellant agreed not to request Government funding for witnesses outside of Camp Pendleton[3] (hereinafter referred to as the "witness provision"). The appellant also agreed to cooperate with NCIS in other investigations,[4] and to testify in other cases if offered testimonial immunity[5] (hereinafter referred to as the "cooperation provisions").

At the appellant's court-martial on 9 November 2015, the military judge inquired into the PTA and confirmed that: (1) the appellant's trial defense counsel explained the agreement to him at least three times; (2) the appellant read the PTA completely at least four times before

---

[1] Appellant's Brief of 25 Mar 2016 at 8 (citation omitted).

[2] The dark web is the World Wide Web content that exists on darknets, overlay networks which use the public Internet but which require specific software, configurations or authorization to access.

[3] "I agree not to request, at Government expense, the presence of any witness located outside of Camp Pendleton. This provision does not interfere with my ability to present an effective case in extenuation and mitigation. If I have further material to present, I intend to use alternative means to present this material. The Government specifically agrees not to object to the admission into evidence of written statements in extenuation and mitigation from witnesses located outside of Camp Pendleton." Appellate Exhibit I at 4, ¶ 15b.

[4] The appellant agreed to "cooperate fully" with NCIS and prosecutors "for a period of 90 days" from "the signing of this agreement by both parties." *Id.* at 7, ¶ 15g. "[F]ull cooperation," is defined by a "non-exhaustive" list that "includes all other tasks necessary to" accomplish the following: "participate with law enforcement . . . as an informant," "conduct controlled purchases," "provide law enforcement with credible information," and "facilitate the introduction of other informants . . . . *Id.* ¶¶ 15 h and i. Significantly, "full cooperation . . . is a precondition that must be satisfactorily met before my case is referred and the guilty plea and sentencing hearing shall be set." *Id.* ¶ 15g.

[5] "If I am provided a grant of testimonial immunity, I agree to testify truthfully if called as a witness against any other individual who may be subsequently charged or investigated for offenses arising out of use, distribution, [or] possession of methylone or MDMA, which is the subject of" the charges. AE I at 5, ¶ 15f. Further in the paragraph: "failure to cooperate on my part constitutes a material breach of this pretrial agreement." *Id.* at 5-6.

2

signing it it; (3) the appellant completely and fully understood the agreement and his trial defense counsel had fully explained each provision to him; and (4) the appellant had no specific questions regarding any provision of the PTA nor desire for the military judge to review any specific provision or the entire agreement with him in court. At no point did the military judge inquire into specific provisions of the agreement, including either the witness or cooperation provisions.

## DISCUSSION

We review a military judge's acceptance of a plea for an abuse of discretion, reversing only if the record as a whole shows a substantial basis in law or fact for questioning the guilty plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). When an accused pleads guilty pursuant to a PTA, the "military judge shall inquire" into the resulting plea agreement to "ensure: (A) That the accused understands the agreement; and (B) That the parties agree to the terms of the agreement." RULE FOR COURTS-MARTIAL 910(f)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). "If the plea agreement contains any unclear or ambiguous terms, the military judge should obtain clarification from the parties. If there is doubt about the accused's understanding of any terms in the agreement, the military judge should explain those terms to the accused." RCM 910(f)(4), Discussion. Indeed:

> This [RCM 910(f)(4)] inquiry is . . . necessary to ensure that an accused is making a fully informed decision as to whether or not to plead guilty. . . . [A]n inquiry that falls short of these requirements and fails to ensure the accused understands the terms of the [pretrial] agreement is error.

*United States v. Hunter*, 65 M.J. 399, 403 (C.A.A.F. 2008) (citations omitted). "The accused must know and understand . . . terms of the agreement, including consequences of future misconduct or waiver of various rights." *United States v. Felder*, 59 M.J. 444, 445 (C.A.A.F. 2004).

With clear precedent from the Court of Appeals for the Armed Forces (CAAF) requiring a showing of prejudice before finding a plea improvident, we decline to classify the failure to inquire into a provision of the PTA as a "structural error[]," which "require[s] no proof of prejudice for reversal." *United States v. Brooks*, 66 M.J. 221, 224 (C.A.A.F. 2008) (noting the "strong presumption that an error is not structural," unless it "involve[s] errors in the trial mechanism so serious that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence" (internal quotation marks and citations omitted)). Absent plain irregularities in the written terms themselves, "we will reject the providency of a plea" based on a deficient RCM 910(f)(4) inquiry by a military judge, "only where the appellant demonstrates a material prejudice to a substantial right." *Hunter*, 65 M.J. at 403 (internal quotation marks and citations omitted). Prejudice is not demonstrated by the mere fact that appellant had to comply with a provision of the PTA into which the military judge did not inquire. *Id.* at 404 (noting that appellant's claim that "he was prejudiced" because his subsequent misconduct triggered a PTA provision is "not the prejudice we look for . . . where a PTA provision is not explained to an accused by the military judge"). Rather, to demonstrate prejudice, "the substantial right that must be prejudiced is the right to make an informed decision

3

to plead guilty." *Id*. at 403 (citing *United States v. Gonzalez*, 61 M.J. 633, 636 (C.G.Ct.Crim.App. 2005)) (additional citations omitted). The CAAF endorsed the reasoning of the Coast Guard Court of Criminal Appeals in *Gonzalez*, that the relevant question is "would the Appellant have chosen to change his plea to not guilty and demand a contested trial had he understood" the relevant provisions? 61 M.J. at 636 (finding "there is not a substantial likelihood that the Appellant would have chosen to change his pleas to not guilty and demanded a contested trial" had appellant "understood the correct application of Articles 58a and 58b, UCMJ").

Here we need not decide whether the military judge erred in his PTA inquiry because, even assuming error, the appellant has failed to articulate any prejudice. *Cf. United States v. Datavs*, 71 M.J. 420, 426 (C.A.A.F. 2012) ("Since we conclude that Appellee was not prejudiced by any alleged error . . . we do not reach the question whether defense counsel's decision . . . constituted deficient performance in this case.") The appellant does not identify a single out-of-area witness he would have called, let alone discuss any proffered testimony. Nor does the appellant indicate that he would have entered a "not guilty" plea, but for the military judge's failure to adequately explain the pretrial agreement. Finally, the appellant has failed to assert that he misunderstood the terms of his pretrial agreement. To the contrary, at sentencing, the appellant demonstrated an understanding of the cooperation provisions:

> Q. Have you cooperated with NCIS at all?
> A. Yes, I have . . . . [P]art of my pretrial agreement was to go–I worked with NCIS for 90 days as part of my pretrial agreement.[6]

Thus, the appellant's conduct belies any prejudicial impact from the military judge's PTA inquiry. The military judge inquired into the PTA as well as the sentence limitations. He confirmed that the appellant had read and discussed each provision with counsel, that he understood each provision, and that he desired no further explanation from the military judge.

Moreover, we find the failure to inquire into these cooperation provisions was moot. Since the PTA was signed by the convening authority on 15 July 2015, the period of cooperation—only 90 days after the date of signature by both parties—expired before the proceedings on 9 November. The convening authority agreed to refer the charges to a special court-martial based in part on the appellant's full cooperation. Thus, the military judge could have assumed there would be no special court-martial had the appellant not already understood and complied with the cooperation provisions.

### CONCLUSION

We note that the court-martial order erroneously indicates the appellant wrongfully imported methylone on "divers" occasions even though the word "divers" was stricken from the specification at trial.[7] Although the appellant has not claimed any prejudice from this error and we do not find any, he is entitled to records that correctly reflect the results of his trial.

---

[6] Record at 42.

[7] *Id.* at 12.

4

Accordingly, the supplemental court-martial order shall restate Specification 1 of Charge II without the word "divers." The findings and sentence as approved by the convening authority are affirmed.

For the Court

R.H. TROIDL
Clerk of Court