# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39685**

————————————

**UNITED STATES**
*Appellee*

**v.**

**James D. JACKMAN**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 August 2020

————————————

*Military Judge:* Shelly W. Schools.

*Sentence*: Sentence adjudged on 19 March 2019 by GCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 8 April 2019: Bad-conduct discharge, confinement for 9 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

PER CURIAM:

Appellant was convicted, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of wrongful use of marijuana on

divers occasions, one specification of wrongful use of cocaine on divers occasions, one specification of wrongful use of amphetamine,[1] one specification of wrongful distribution of marijuana on divers occasions, one specification of wrongful possession of marijuana on divers occasions, and two specifications of wrongful solicitation of another to distribute a controlled substance (marijuana "and/or" amphetamine),[2] in violation of Articles 112a and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 934.[3]

A general court-martial composed of a military judge sitting alone sentenced Appellant to a bad-conduct discharge, confinement for ten months, forfeiture of all pay and allowances, and reduction to the grade of E-1. In undated clemency letters, Appellant and his defense counsel requested the convening authority "disapprove two-thirds of the adjudged total forfeitures." The convening authority's decision memorandum on action did not state that he reviewed Appellant's clemency request. In taking action on the sentence, the convening authority reduced the confinement from ten to nine months to comply with the PTA but he did not disapprove any of the forfeitures. The military judge signed the entry of judgment (EoJ) the same day the convening authority took action on the sentence. The parties did not file any post-trial motions with the military judge. On 17 April 2019, the court reporter certified the record of trial and on 3 May 2019, the record of trial was docketed with our court.

Appellant submitted his case to us without a specific assignment of error. Appellant's counsel noted in his merits brief that he "identified a potential post-trial error, but . . . concluded that any such error would be non-prejudicial to Appellant." We are unsure of the nature of the error that appellate defense counsel identified, as he chose not to disclose the error to us. In our review under Article 66, UCMJ, 10 U.S.C. § 866, we identified several post-trial processing issues including (1) whether the signed Statement of Trial Results (STR) and EoJ must be modified where the pleas and findings to both Charge I and II are omitted; (2) whether prejudicial error exists when there is no doc-

---

[1] Consistent with the PTA, Appellant pleaded guilty to wrongful use of amphetamine except the words "on divers occasions." The PTA did not require the convening authority to withdraw and dismiss the excepted words. After the Government indicated it would not present any evidence, the parties agreed the military judge should enter a finding of not guilty to the excepted words and the military judge did so.

[2] Only one of the two specifications included the words "on divers occasions."

[3] Unless otherwise noted, references to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise noted, all other references to the UCMJ and to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

umentation in the record of trial that the convening authority considered Appellant's clemency matters; and (3) whether the record of trial is defective when the audio recordings of the court-martial sessions contain five additional audio files that are recordings of conversations in the courtroom when the court-martial was not in session.

On the first issue, we find the omissions in the STR and EoJ are plain errors but require no corrective action by this court because the pleas and findings to the specifications are correctly documented in the STR and EoJ. On the second issue, we find forfeiture as Appellant failed to file a post-trial motion with the military judge under R.C.M. 1104(b)(2)(B) and no plain error when there is no documentation in the record of trial that the convening authority considered Appellant's clemency. On the third issue, we find the record of trial defective and we return it for a certificate of correction.

## I. BACKGROUND

Appellant entered active duty in March 2016. In July 2016, he arrived at his first permanent duty station, Nellis Air Force Base, Nevada. A few months later Appellant used marijuana after he encountered an unknown man smoking marijuana on the "Strip" portion of Las Vegas Boulevard and asked the man if he "could take a hit of [his] joint." Over the next several months, Appellant purchased marijuana from various civilians and smoked it. On 1 July 2017, a local marijuana dispensary opened in Las Vegas. Over the next year, Appellant visited this particular dispensary more than 100 times and spent over $4,000.00 on marijuana products. Appellant used the most of the marijuana he purchased himself, but he also distributed it to four other Airmen. During the providence inquiry, Appellant explained he distributed the marijuana to two particular Airmen "most frequently" and did so "at least once every weekend" over a ten-month period.

There was a period of about five months when Appellant did not purchase his own marijuana directly from the dispensary. This was because the dispensary required a form of identification and Appellant's state driver's license had expired. Appellant did not want to use his military identification card at the dispensary, so he solicited two fellow Airmen to purchase marijuana for him and then distribute it to him.[4] One Airman agreed to Appellant's request twice and purchased marijuana at another dispensary and distributed it to Appellant. A second Airman, Senior Airman (SrA) JB, agreed to Appellant's requests

---

[4] Appellant did not use the military discount that the dispensary offered to its patrons.

almost two dozen times and used the same dispensary that Appellant frequented. Sometimes, Appellant would accompany SrA JB to the dispensary, but SrA JB would purchase the marijuana.

Appellant also solicited SrA JB to distribute amphetamine to him on a single occasion. SrA JB had a prescription for Adderall, which contains amphetamine, but SrA JB did not distribute Adderall to Appellant. Appellant was able to successfully purchase an Adderall pill from a civilian while at a local Las Vegas bar. Appellant ingested the Adderall pill one morning before he went to work. Appellant also "snorted a line" of cocaine when several of his friends visited Las Vegas and another time when he was in his hometown on leave.

On 17 July 2018, Appellant confided in a co-worker, SrA AG, that a noncommissioned officer (NCO) from their unit may have witnessed him smoking marijuana in a car. Two days later, agents from the Air Force Office of Special Investigations (AFOSI) interviewed SrA AG for a separate drug investigation and she disclosed what Appellant had told her.

Later that day, a search of Appellant's vehicle was conducted using a military working dog. Marijuana was discovered in the vehicle along with various dispensary receipts, bags, and containers. While Appellant was waiting to be interviewed by the AFOSI agents, he requested to speak with one of the agents and then told him, "I know I had stuff in my car. So, I would rather just confess. . . . I could save you guys time, save me time; I take full responsibility." Later, Appellant waived his rights under Article 31, UCMJ, 10 U.S.C. § 831, and admitted *inter alia* that he would smoke marijuana "as often as [he] could." Appellant provided the names of 11 military members who he knew had wrongfully used drugs, 10 of whom the AFOSI agents had no reason to suspect of illegal drug activity.

On the day of the search, Appellant consented to provide a urine sample which later tested positive for both tetrahydrocannabinol (THC), the active ingredient of marijuana, and D-amphetamine. Appellant provided five subsequent urine samples between 23 July 2018 and 26 September 2018 and each of them tested positive for THC.

## II. DISCUSSION

### A. Post-Trial Processing

As noted above, we identified post-trial processing issues during our review which involved the STR, the convening authority's decision memorandum, the EoJ, and the additional audio recordings saved alongside the court-martial sessions' recordings. We address these issues in turn.

4

**B. Law**

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). Interpretation of a Rule for Courts-Martial (R.C.M.) provision is a question of law that we review de novo. *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008) (citation omitted).

> After final adjournment of a general or special court-martial, the military judge shall sign and include in the record of trial a [STR]. The [STR] shall consist of the following—
>
> . . . For each charge and specification referred to trial—
>
> (A) a summary of each charge and specification;
>
> (B) the plea(s) of the accused; and
>
> (C) the finding or other disposition of each charge and specification.

R.C.M. 1101.

"After a trial by general or special court-martial, the accused may submit matters to the convening authority under this rule within ten days after the sentence is announced." R.C.M. 1106(d)(1). Before taking action on the sentence, "the convening authority shall consider matters timely submitted under R.C.M. 1106." R.C.M. 1109(d)(3)(A).

"Under regulations prescribed by the Secretary concerned, the military judge of a general or special court-martial shall enter into the record of trial the judgment of the court." R.C.M. 1111(a)(1). "The judgment reflects the result of the court-martial, as modified by any post-trial actions, rulings, or orders. The entry of judgment terminates the trial proceedings and initiates the appellate process." R.C.M. 1111(a)(2).

"The Judge Advocate General, the Court of Criminal Appeals, and the [United States] Court of Appeals for the Armed Forces may modify a judgment in the performance of their duties and responsibilities." R.C.M. 1111(c)(2). "If a case is remanded to a military judge, the military judge may modify the judgment consistent with the purposes of the remand." R.C.M. 1111(c)(3).

"If the Court of Criminal Appeals determines that additional proceedings are warranted, the Court may order a hearing as may be necessary to address a substantial issue, subject to such limitations as the Court may direct and under such regulations as the [P]resident may prescribe." Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3). "A Court of Criminal Appeals may order a remand for additional fact finding, or for other reasons, in order to address a substantial issue on appeal." R.C.M. 810(f)(1).

"The record of trial contains the court-martial proceedings, and includes any evidence or exhibits considered by the court-martial in determining the findings or sentence." R.C.M. 1112(b). "The record of trial in every general and special court-martial shall include . . . [a] substantially verbatim recording of the court-martial proceedings except sessions closed for deliberations and voting." *Id.* "A court reporter shall prepare and certify that the record of trial includes all items required under [R.C.M. 1112(b)]." R.C.M. 1112(c). "Court-martial proceedings may be recorded by videotape, audiotape, or other technology from which sound images may be reproduced to accurately depict the court-martial." R.C.M. 1112(a).

"A record of trial found to be incomplete or defective before or after certification may be corrected to make it accurate." R.C.M. 1112(d)(2). "A superior competent authority may return a record of trial to the military judge for correction under this rule." *Id.* "[S]uperior competent authorities may also return the [record of trial] back to the Chief Trial Judge, [Air Force Trial Judiciary], for correction of any defective record." Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 13.53.3.3.1 (18 Jan. 2019, as amended by AFGM 2019-02, 30 Oct. 2019).

## C. Analysis

### 1. STR and EoJ omissions

The first issue we address is the failure of the STR and EoJ to reflect the pleas and findings for Charge I and Charge II. These are obvious errors as Appellant pleaded guilty to both charges and the military judge found him guilty of both charges. While the pleas and findings are correctly listed for each of the specifications under the charges, they are omitted for the charges themselves.

Errors on an EoJ concern us more than similar errors on the STR because the EoJ terminates the trial proceedings and initiates the appellate process. *See* R.C.M. 1112(a)(2). On the other hand, "it is also well settled that the failure to make findings as to a charge is immaterial because an accused's criminality is determined by the findings as to the specifications, not the charge." *United States v. Logan*, 15 M.J. 1084, 1085 (A.F.C.M.R. 1983) (per curiam) (citation omitted). Taking into account this precedent, we find that omitting the pleas and the findings to the charges on the STR and EoJ is also immaterial to determining Appellant's criminality so long as the pleas and findings to the specifications are accurate. *See Logan*, 15 M.J. at 1085. While we expect those assigned the responsibility of preparing and signing these documents to pay close attention to their accuracy, we find this particular omission is immaterial under the law and leaves us with no substantial issue to resolve on appeal re-

garding the STR or EoJ's accuracy. Therefore, we conclude that a remand under Article 66(f)(3), UCMJ, and R.C.M. 810(f)(1) to modify these documents is unwarranted.

Even if a remand is not warranted for additional proceedings, R.C.M. 1111(c)(2) permits The Judge Advocate General (TJAG) and our court to modify an EoJ in the performance of our duties and responsibilities. This gives both our court and TJAG an opportunity to correct minor documentation errors in an EoJ which are discovered on appeal but are not substantial issues to the appeal. A similar provision permitting modification of the STR is not currently in R.C.M. 1101.[5] We have considered whether to exercise our discretion to modify the EoJ ourselves in this case; we decline to do so.[6] Of course, R.C.M. 1111(c)(2) vests similar discretionary authority to modify the EoJ in TJAG.

### 2. Documenting the consideration of clemency matters

We now turn to the clemency process in this case. The original record of trial contains clemency matters submitted by Appellant and his defense counsel. None of them are dated and it is unclear when they were received by the legal office, so we cannot determine whether they were submitted within the ten-day window of R.C.M. 1106(d)(1). There is also no documentation that the convening authority considered the clemency matters or declined to consider them if they were untimely submitted. It would undoubtedly be a prejudicial error if the convening authority failed to consider timely-submitted clemency matters, but we do not know that the convening authority failed to consider Appellant's matters. What we do know is the convening authority's decision memorandum on action is silent on this topic. So we consider whether the record of trial must show whether the submitted matters were considered.

We are aware of no Rule for Courts-Martial that requires documentation by the convening authority that the clemency matters were considered. Still,

---

[5] The STR also contains another error, one we have seen before, when it omitted the command that convened the court-martial as required by R.C.M. 1001(a)(3). *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (unpub. op.). This court did not find it necessary to "direct corrective action" in *Moody-Neukom* and we see no reason for a different result in this case.

[6] In a recent decision involving a court-martial order, instead of an EoJ, our court found "curative action unnecessary" when the military judge did not enter findings of guilt to a charge and the court-martial order indicated that such findings were made. *See United States v. Lawler*, No. ACM 39699, 2020 CCA LEXIS 186, at *1 n.2 (A.F. Ct. Crim. App. 28 May 2020) (unpub. op.).

we can appreciate the value of an Air Force practice, even if not required by law, to include such documentation in the convening authority's decision memorandum on action to avoid unnecessary post-trial motions or appellate litigation. Such a practice would show an accused that the clemency matters were considered as required by R.C.M. 1109(d)(3)(A).[7] Here, we know Appellant had an opportunity to file a post-trial motion with the military judge under R.C.M. 1104(b)(1) and its sub-provisions to raise a concern that his clemency matters were not properly considered. As Appellant failed to file a post-trial motion, we must determine whether he waived or forfeited the issue.

We have the discretion under Article 66, UCMJ, to determine whether to apply waiver or forfeiture in a particular case, or to pierce waiver or forfeiture in order to correct a legal error. *See United States v. Lee*, No. ACM 39531, 2020 CCA LEXIS 61, at *17 (A.F. Ct. Crim. App. 26 Feb. 2020) (unpub. op.) (citing *United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018); *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016)). Exercising that authority, we have determined that forfeiture is the appropriate standard to apply to this particular case and we accordingly test for plain error.

To prevail under a plain error analysis, an appellant must show "(1) there was an error; (2) [the error] was plain or obvious; and (3) the error materially prejudiced a substantial right." *See United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (en banc) (quoting *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)). Even if we assume there was a plain or obvious error, Appellant has not attempted to show that he was prejudiced and the merits brief submitted by his counsel specifically indicates that he suffered no prejudice from "any such" post-trial processing error. Under these circumstances, we find no prejudice.

### 3. Audio Recordings

The third issue is the inclusion in the original, certified record of trial of five additional audio recording files that are not sessions of the court-martial. We can understand how some of these recordings could have been made in error. We are very familiar with getting ready to start a session of court only to have it delayed momentarily, or longer, to address an unforeseen issue with the military judge, the parties, or the courtroom spectators. But it is one thing to record five files that are not sessions of the court and an entirely different thing to include them on the disc placed in the original record of trial. This is

---

[7] The template for "Convening Authority Decision on Action" does not include sample language to show the convening authority considered the accused's clemency submissions. *See* AFI 51-201, Figure A9.5. We are aware that the most recent versions of templates are available electronically for military justice practitioners before they are incorporated into AFI 51-201. *See* AFI 51-201, ¶ 1.2.

concerning because it appears to us that some of those talking on these extra recordings were either unaware that they were being recorded or, if aware, had forgotten how sensitive the recording equipment was in the courtroom. Given these circumstances, we find the record of trial is defective under R.C.M. 1112(d)(2) for including audio recording files that were not sessions of the court-martial.[8] Accordingly, we order the record of trial be corrected and returned to the Chief Trial Judge of the Air Force in accordance with R.C.M. 1112(d)(2).

## III. CONCLUSION

The record of trial is **RETURNED** to the Chief Trial Judge, Air Force Trial Judiciary, for correction under R.C.M. 1112(d)(2) so it only includes audio recordings of the sessions of the court-martial. Such corrections shall be completed not later than **11 September 2020**. Thereafter, the record of trial shall be returned for completion of appellate review under Article 66, UCMJ.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[8] There were no closed sessions in this court-martial.

9