# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WALKER, POND, and PARKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant DAVID L. HUNTER**
**United States Army, Appellant**

ARMY 20230313

Headquarters, III Corps and Fort Cavazos
Maureen A. Kohn, Military Judge
Colonel Runo C. Richardson, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA (on brief and supplemental brief); Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA (on reply brief).

For Appellee: Major Chase C. Cleveland, JA; Colonel Christopher B. Burgess, JA; Captain Anthony J. Scarpati, JA (on brief).

26 June 2024

-----------------------------------
OPINION OF THE COURT
-----------------------------------

PARKER, Judge:

Appellant raises five assignments of error, two of which warrant discussion. Appellant alleges his dishonorable discharge is inappropriately severe. We agree. Appellant also alleges that a term included in his plea agreement is unenforceable as it curtails this court's authority and is contrary to Rule for Courts-Martial [R.C.M.] 705(e)(4)(B). We agree and provide sentence relief in our decretal paragraph.

## BACKGROUND

Pursuant to his plea, a military judge found appellant guilty of one specification of negligent homicide in violation of Article 134, Uniform Code of

Military Justice, 10 U.S.C. § 934 [UCMJ].[1] Appellant was sentenced to a dishonorable discharge and nine months of confinement.

On 9 September 2022, appellant left a medical appointment at the military hospital on Fort Cavazos, Texas, in his GMC Sierra pickup truck. As appellant approached a four-way intersection in the parking lot of the hospital, he failed to stop his truck at a stop sign. As appellant proceeded to turn left and entered into the intersection, he became distracted and did not see Mrs. ██ who was approximately a third of the way into the crosswalk.[2] Appellant then struck Mrs. ██ with his truck as she reached the center of the intersection. Due to the size and lift on appellant's pickup truck, and the fact that appellant did not see Mrs. ██, she was not only struck by the vehicle but was also struck by both the front and back driver's side tires as appellant continued to drive. Moments after impact, appellant exited his vehicle and attempted to assist Mrs. ██ while he repeatedly stated he "didn't see [Mrs. ██]." Mrs. ██'s injuries were catastrophic and despite attempts of bystanders with medical training to render aid until an ambulance arrived, Mrs. ██ died. At the scene, appellant hyperventilated, wept, and had a panic attack that required him to be admitted into the hospital for treatment of shock. Appellant accepted immediate responsibility for this unintentional yet negligent act, apologized consistently and remorsefully, admitted fault to criminal investigators, and began plea discussions with the government pertaining to his charged offenses.

In anticipation of appellant's guilty plea, appellant and the convening authority signed a plea agreement. In the sentence limitation paragraph of the plea agreement, appellant agreed that "[t]he military judge shall adjudge a Dishonorable Discharge." The plea agreement also stated, as to the involuntary manslaughter charge to which appellant pled not guilty, that the convening authority agreed "the withdrawn charge and specification will be dismissed by the Convening Authority without prejudice, to ripen into prejudice upon completion of appellate review in which the findings *and sentence* have been upheld." (emphasis added).

The military judge advised appellant that the plea agreement he signed with the convening authority required the judge to adjudge a dishonorable discharge. The military judge also advised appellant as to the effects of a dishonorable discharge, to

---

[1] Pursuant to appellant's plea agreement, the involuntary manslaughter offense alleged in The Specification of Charge I was dismissed.

[2] Appellant was "distracted by multiple issues, including the pain in his back that he had just been in treatment for, thinking about work taskers and deadlines, and reflecting over an incident that had just occurred on the hospital elevator regarding a young child who got stuck in front of the closing door that [appellant] stopped from closing on the child."

include potential effects on Veterans Affairs benefits and military retirement benefits. Appellant stated he fully understood the ramifications of a dishonorable discharge and that it was his express desire to be discharged with a dishonorable discharge. Notably, during his sentencing argument, appellant's counsel specifically requested a dishonorable discharge in conjunction with the minimum term of confinement in accordance with his plea agreement.

The military judge also advised appellant on the provisions in the plea agreement as to what the convening authority agreed to do as a result of the guilty plea. The judge advised that the convening authority agreed to withdraw the involuntary manslaughter charge, and that after the announcement of sentence, the charge would be dismissed "without prejudice, to ripen into prejudice upon the completion of appellate review in which the findings *and sentence* have been upheld." (emphasis added). The military judge then explained that after sentence was announced, the involuntary manslaughter offense would be dismissed without prejudice "until the appellate court has entered its final judgment and has upheld your plea of guilty." Appellant indicated he understood this language from the plea agreement.

## LAW AND DISCUSSION

### *A. Dishonorable Discharge*

Appellant asserts that his sentence is inappropriately severe in that appellant stipulated to his negligent and unintentional act, but the military judge had no discretion as to the punitive discharge. Appellant requests that this court reassess his dishonorable discharge by giving him "individualized consideration" based on "the nature and seriousness of the offense and character of the offender." Specifically, appellant asks that we only affirm his adjudged confinement. While we acknowledge that appellant was remorseful and accepted responsibility for his negligent and unintentional act that resulted in the death of Mrs. ███, we disagree with appellant that we should not affirm any punitive discharge. However, we do agree with appellant that a dishonorable discharge is inappropriately severe in this case for the reasons discussed below.

All service Courts of Criminal Appeals (CCAs), pursuant to Article 66, UCMJ, review sentence appropriateness de novo. *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018) (cleaned up).

Sentence appropriateness is a statutory obligation of all service CCAs in which the court "may affirm only [a] sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of

the entire record, should be approved."[3] UCMJ art. 66(d)(1)(A). In exercising this broad power of plenary review, our superior court has described the CCAs as having "*carte blanche* to do justice." *Kelly*, 77 M.J. at 406 (cleaned up). Thus, this court "has discretion to approve only that part of a sentence that it finds 'should be approved,' even if the sentence is 'correct' as a matter of law." *Id.* (quoting *United States v. Nerad*, 69 M.J. 138, 142 (C.A.A.F. 2010)). In determining whether a sentence "should be approved," the standard is "not legality alone, but legality limited by appropriateness." *Nerad*, 69 M.J. at 142 (cleaned up). Additionally, we note that while Article 66 "empowers the CCAs to 'do justice,' . . . [it] does not grant the CCAs the ability to 'grant mercy.'" *Id.* at 146 (cleaned up). This court's review of sentence appropriateness must include an "individualized consideration of the particular [appellant] on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (cleaned up). When this court reviews sentence appropriateness, "we review many factors to include: the sentence severity; . . . appellant's character and military service; and the nature, seriousness, facts, and circumstances of the criminal course of conduct." *United States v. Martinez*, 76 M.J. 837, 841-42 (Army Ct. Crim. App. 2017). Stated another way, we are required to consider *all* matters contained in the record of trial in reviewing the appropriateness of appellant's sentence. *Id.* at 840 (CCAs consider the "entire record" when determining sentence appropriateness) (quoting UCMJ art. 66(c) (2012)).

In acknowledging that this court has unfettered discretion to affirm sentences that are appropriate under the circumstances, appellant asserts that his dishonorable discharge is inappropriately severe because: 1) dishonorable discharges for negligent acts are almost non-existent and have never been adjudged absent other egregious misconduct; 2) for traffic fatalities—where the underlying negligent act is an otherwise minor traffic infraction—the majority of cases do not adjudge or approve any punitive discharge; and 3) that since the implementation of the new R.C.M. 705 and plea agreements, this court should look even closer at sentence appropriateness when a convening authority attempts to remove the judiciary's discretion.

We start by highlighting that appellant bargained for a dishonorable discharge in his plea agreement which was agreed to by both parties. We further highlight that

---

[3] We acknowledge that our Article 66 "should be approved" power for consideration of sentences will no longer be applicable to offenses occurring after 27 December 2023. *See* National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, §539E, 135 Stat. 1541, 1700-06 (2021) (consideration of sentence amendments to Article 66, UCMJ, will apply to adjudged sentences where all findings of guilty are for offenses that occurred after 27 December 2023). Given the date of appellant's offense, our "should be approved" power remains applicable in this case.

the military judge advised appellant on the dishonorable discharge portion of the plea agreement as well as the effects of a dishonorable discharge, and that appellant indicated to the military judge he understood and specifically requested such a discharge. Appellant even argued to be adjudged a dishonorable discharge in his counsel's sentencing argument. We considered these facts as part of our obligation to consider the *entire* record in determining whether the dishonorable discharge, or any punitive discharge, is inappropriately severe.

We acknowledge appellant's outstanding service record and his persuasive sentencing case as to his outstanding soldier qualities. It appears to this court that appellant could have, or perhaps even tried to, bargain for a bad-conduct discharge, which would not have been an inappropriately severe discharge in this case. However, the result of plea negotiations with the convening authority was both parties agreeing that the military judge shall adjudge a dishonorable discharge in exchange for appellant receiving a limited confinement range with a maximum of twelve months. Although appellant argues that even a bad-conduct discharge is a harsh and inappropriately severe sentence, we disagree in light of appellant's desire to negotiate favorable confinement limits in his plea agreement. To set aside a punitive discharge altogether would undermine the process of an accused entering into a plea agreement with a convening authority – an accused should always enter into a plea agreement with the assumption that the terms are binding and enforceable. *See United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2010) ("A pretrial agreement in the military justice system establishes a constitutional contract between the accused and the convening authority."). Here, appellant knowingly and voluntarily entered into an agreement adjudging a punitive discharge in exchange for a limitation on his confinement and dismissal of the greater offense of involuntary manslaughter.

However, when we consider whether to approve the dishonorable discharge, we agree with appellant that it is inappropriately severe. Appellant's actions, though negligent, were unintentional. Appellant tried to assist the victim, took full responsibility for his actions, and had an impeccable service record. We also note that the plea agreement term requiring a dishonorable discharge to survive appellate review appears to be a tacit acknowledgment by the government that the discharge was likely to be challenged for sentence appropriateness. This court has a great deal of discretion in determining whether a particular sentence is appropriate and we take that solemn responsibility seriously and recognize we are not authorized to engage in exercises of clemency. *United States v. Healy*, 26 M.J. 394, 395-95 (C.M.A. 1988). We have carefully and thoughtfully considered all relevant factors in determining whether appellant's sentence is appropriate. We have given individualized consideration to appellant, the severity of his sentence, the nature and seriousness of the offenses, appellant's record of service, and all other matters contained in the record of trial, including the fact that appellant's plea agreement is bound by contractual principles and he bargained for a punitive discharge in

exchange for a less severe range of confinement and dismissal of a more severe offense. In light of the record as a whole and all of the foregoing factors discussed herein, we conclude that a dishonorable discharge is inappropriate in that it neither fits the circumstances in the record nor the offender and provide relief in our decretal paragraph pursuant to this court's authority under Article 66, UCMJ. We turn now to whether the convening authority can withdraw from the plea agreement based on our sentence relief.

*B. Plea Agreement Term*

Appellant argues that the plea agreement contains impermissible language in that it allows the convening authority to effectively withdraw if this court provides any sentence relief for any reason. Specifically, paragraph 7a of the plea agreement states the convening authority agrees to dismiss the involuntary manslaughter charge "without prejudice, to ripen into prejudice upon completion of appellate review in which the findings *and sentence* have been upheld." (emphasis added). Appellant argues that by including the language "and sentence have been upheld," our authority as an appellate court has been curtailed and that the language is contrary to R.C.M. 705(e)(4)(B). We agree with appellant and find this language in appellant's plea agreement to be unenforceable.

We conduct a de novo review of interpretations of the R.C.M. and as to whether terms in a plea agreement violate the R.C.M. *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008) (cleaned up).

Rule for Courts-Martial 705 sets forth the requirements and limitations of plea agreements entered into by an accused and the convening authority and paragraph (e)(4) specifically dictates the conditions upon which a convening authority may withdraw from a plea agreement. Among the conditions listed, it includes that a convening authority may withdraw "if *findings* are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review." R.C.M. 705(e)(4)(B) (emphasis added). Notably absent from the authority provided to convening authorities in this paragraph is the ability to withdraw if an appellate court takes action regarding an appellant's sentence.[4] We agree the convening authority included unenforceable language pertaining to action on appellant's sentence in the plea agreement. We also agree with appellant that the convening authority does not extend his withdrawal power by including this term. The convening authority may not instill in itself the power to withdraw from appellant's plea agreement should this court use its authority pursuant to Article 66, UCMJ, to

---

[4] *See* R.C.M. 705(c)(2)(G) (stating other terms or conditions must not be contrary or inconsistent with R.C.M. 705 to be permissible).

take action on appellant's sentence. As such, we strike the words "and sentence" from paragraph 7a in the plea agreement.[5]

## CONCLUSION

On consideration of the entire record, the findings of guilty to the Specification of Charge II and Charge II are AFFIRMED. We affirm a sentence as provides for a bad-conduct discharge and confinement for nine months. The dishonorable discharge portion of the sentence is SET ASIDE. All rights, privileges, and property, of which appellant has been deprived by virtue of the portion of the sentence set aside by this decision, are ordered restored.

Senior Judge WALKER and Judge POND concur.

FOR THE COURT:

//JAMES W. HERRING, JR.
Clerk of Court

---

[5] As this language was included without authority in the plea agreement and is unenforceable, we decline to address appellant's public policy argument pertaining to the inclusion of this term.