# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 40423**

_____

**UNITED STATES**
*Appellee*

**v.**

**Mario D. MOORE**
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 8 May 2024

_____

*Military Judge*: Brian C. Mason.

*Sentence*: Sentence adjudged 31 October 2022 by GCM convened at Fort Meade, Maryland. Sentence entered by military judge on 23 December 2022: Bad-conduct discharge, confinement for 10 days, and reduction to E-2.

*For Appellant*: Major Matthew L. Blyth, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Major Olivia B. Hoff, USAF; Captain Kate E. Lee, USAF; Ms. Mary Ellen Payne, Esquire.

Before JOHNSON, GRUEN, and WARREN, *Appellate Military Judges*.

Judge WARREN delivered the opinion of the court, in which Chief Judge JOHNSON and Judge GRUEN joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

WARREN, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a plea

agreement, of three specifications of assault consummated by a battery against IC, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1] The military judge sentenced Appellant, within the agreed-upon sentencing parameters established in Appellant's plea agreement, to a bad-conduct discharge, confinement for ten days, reduction to the grade of E-2, and forfeiture of $1,300.00 pay per month for six months.[2] The convening authority took no action on the findings, but did take action on the sentence, disapproving the adjudged forfeitures and waiving the automatic forfeitures for the benefit of Appellant's minor children.

Appellant personally raises two issues on appeal,[3] which we have reworded: (1) whether his sentence to a bad-conduct discharge was inappropriately severe; and (2) whether the convening authority violated Appellant's due process rights by serving the crime victim's post-trial matters only on trial defense counsel, but not Appellant, prior to the convening authority taking clemency action in this case.

We have carefully considered both of Appellant's issues and we find no error that materially prejudices a substantial right of Appellant and therefore affirm the findings and the sentence.

## I. BACKGROUND

At his court-martial on 31 October 2022, Appellant pleaded guilty to unlawfully pulling IC by the wrists, touching her inner thighs with his leg, and touching her buttocks through her clothing with his hand.

This conduct stemmed from Appellant's attempt to initiate talk of a romantic relationship with IC, his co-worker and friend since December 2018, while he was visiting her at her home on 5 February 2021 shortly after she completed her work shift. When his verbal attempts proved unsuccessful, he initiated physical contact with IC without her consent.

---

[1] All references to the punitive articles and Rules for Courts-Martial in this opinion are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Two charges consisting of a total of six specifications were referred against Appellant—two specifications alleging abusive sexual contact of IC in violation of Article 120, UCMJ, 10 U.S.C. § 920 (Charge I), and four specifications of assault consummated by a battery against IC, in violation of Article 128, UCMJ (Charge II). However, pursuant to the plea agreement, the convening authority dismissed with prejudice Charge I and its two specifications and the remaining specification to Charge II after the announcement of sentence for the offenses to which Appellant pleaded guilty.

[3] Appellant raises both these issues pursuant to *United States v. Grostefon*, 12 M.J. 431, 436–37 (C.M.A. 1982).

Specifically, Appellant, who was married to another person, told IC about how he enjoyed a hug she had given him earlier that day after he had said he was feeling troubled and needed a hug. He then spoke wistfully to her of what their relationship might have been had they engaged in a romantic relationship when they first met back in 2018. Feeling uncomfortable and lacking any romantic feelings towards Appellant, IC attempted to change the subject and leave the room. In response, Appellant grabbed her wrists with his hands and pulled her towards him while IC told him, "[N]o, you're married, I would feel bad." As she pulled to free herself from his grasp, IC fell to the ground, whereupon Appellant kneeled in front of her, forcefully placed his leg in between her legs, and used his leg to push her legs further apart from each other. IC got to her feet and repositioned herself away from Appellant, then texted a fellow Airman to call her so that she would have a reason to leave, and indicated it was an "emergency." After that friend called in response to IC's urgent request, IC made her excuses stating that she needed to leave to pick up this friend. Appellant followed her out to her car. There, he initiated a hug and IC gave him a one-armed side hug. Appellant then slapped IC on her buttocks with his hand as she turned to get into her car. Moments after she left, Appellant attempted to text IC and apologize for his actions. By that time, IC had already blocked Appellant as a contact both on her phone and on all her social media.

During the presentencing proceedings of Appellant's court-martial, IC offered a written victim unsworn statement without objection. In that statement, IC asserted that "[her] mindset changed completely" the day that Appellant assaulted her in her home. She explained that the sense of betrayal she felt from Appellant, whom she considered to be more "like a brother," has now caused her to "question [herself] all the time, especially the way [she] look[s] at others every day . . ." and how she now finds herself "meeting new people or seeing old friends and automatically mistrusting them." She also voiced concerns that "[t]his situation has made [her] fearful to live by [herself]." In recounting her recurring anxiety related to Appellant's assault upon her, IC asserted: "I never thought that . . . [s]omeone without a weapon could cause so much lasting fear in my heart. Someone who I loved like a brother could cause me so much pain in 15 minutes, in my own home."

On 31 October 2022, the same day the court-martial ended, IC submitted matters to the convening authority for consideration pursuant to Rule for Courts-Martial (R.C.M.) 1106A—those matters were identical to the written unsworn victim impact statement introduced at Appellant's court-martial. Thereafter, on 3 November 2022, Appellant's lead trial defense counsel, Captain (Capt) TW, submitted a clemency package to the convening authority on Appellant's behalf, consisting of a two-page memorandum from Capt TW with three attachments: the first attachment contained three character letters; the

second attachment contained a brief PowerPoint photo presentation featuring Appellant's family, friends, and Air Force accomplishments; and the third attachment contained a copy of the same written unsworn statement which Appellant presented during presentencing at his trial. The Government served the victim matters upon trial defense counsel (Capt TW) on 10 November 2022, and Capt TW receipted for those matters the same day. However, the record of trial does not include a receipt from Appellant personally as to those same matters.[4] Capt TW did not file any rebuttal matters after receiving the victim matters on 10 November 2022.

Thereafter, on 8 December 2022, the convening authority issued his decision on action memorandum in Appellant's case, noting that prior to doing so he considered all "matters timely submitted" by both IC and Appellant. Finally, on 23 December 2022, the military judge issued a corrected copy of the Statement of Trial Results and signed the entry of judgment for Appellant's case. The convening authority's decision on action memorandum and the military judge's entry of judgment were not served upon trial defense counsel until 6 January 2023. Trial defense counsel did not file a post-trial motion[5] alleging post-trial error for the Government's purported failure to personally serve IC's victim matters upon Appellant.

## II. DISCUSSION

### A. Sentence Severity

#### 1. Law

We review issues of sentence appropriateness de novo. *See United States v. McAlhaney*, 83 M.J. 164, 166 (C.A.A.F. 2023) (citing *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006)). Our authority "reflects the unique history and attributes of the military justice system, [and] includes . . . considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact. Article 66(d), UCMJ, 10 U.S.C. § 866(d). In reviewing a judge-alone sentencing, we "must consider the appropriateness of each segment of a segmented sentence and the

---

[4] We also note that the record does not include an attestation or affidavit from Appellant claiming he never *received* those matters. Appellant provided no post-trial declaration with his brief. Rather, Appellant's brief carefully parses this issue, reciting only that "[t]here is no receipt from [Appellant]," and that "[Appellant] never signed a receipt for the submission of [IC's] matters."

[5] *See* R.C.M. 1104(b)(2).

appropriateness of the sentence as a whole." *See United States v. Flores*, __ M.J. __, No. 23–0198, 2024 CAAF LEXIS 162, at *1 (C.A.A.F. 14 Mar. 2024).

In assessing whether a sentence ought to be overturned because it is inappropriately severe, we are cognizant that "[t]he numerous permutations and combinations of sentencing alternatives available to the sentencing authority are so broad that, normally, there will not be only one sentence that is appropriate for a particular appellant." *United States v. Joyner*, 39 M.J. 965, 966 (A.F.C.M.R. 1994). The proper test for sentence appropriateness is "whether, when viewed as a whole, the approved sentence is inappropriate for this appellant based on appellant's character and the circumstances surrounding the offense." *Id.*

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although the Courts of Criminal Appeals are empowered to "'do justice[ ]' with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)). In the end, "[t]he purpose of Article 66[ ], UCMJ, is to ensure 'that justice is done and that the accused gets the punishment he deserves.'" *United States v. Sanchez*, 50 M.J. 506, 512 (A.F. Ct. Crim. App. 1999) (quoting *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988)).

Turning to the precise punishment which Appellant challenges as inappropriately severe in this case, R.C.M. 1003(b)(8)(C) describes the purpose of a bad-conduct discharge as "a punishment for bad conduct rather than as a punishment for serious offenses of either a civilian or military nature. It is also appropriate for an accused who has been convicted repeatedly of minor offenses and whose punitive separation appears to be necessary."

### 2. Analysis

Here Appellant challenges only his bad conduct-discharge as inappropriately severe. Nonetheless, consistent with our superior court's recent interpretation of our sentence appropriateness review in the context of a judge-alone case, we have considered the appropriateness of the sentence as a whole as well as each increment of segmented confinement adjudged by the military judge. *See Flores*, 2024 CAAF LEXIS 162, at *1. Having done so, we are unpersuaded that any portion of Appellant's approved sentence (*i.e.*, the confinement, reduction in grade, forfeitures of pay, and punitive discharge), or the sentence as a whole, is inappropriately severe.

Appellant essentially argues that the relative leniency the military judge exercised in imposing confinement (10 days per specification when the plea agreement allowed for as many as 150 days per specification) is inconsistent with the military judge imposing a bad-conduct discharge. Not so. Different punishments are available to the sentencing authority because they accomplish different purposes. It is reasonable for a sentencing authority to view confinement primarily as a tool of specific deterrence to prevent future misconduct and preserve public safety, *see* R.C.M. 1002(f)(3)(D) and (E), while separately viewing a punitive discharge as a tool designed to appropriately characterize an accused's service and punitively end their service when their crimes are sufficiently deleterious to good order and discipline, *see* R.C.M. 1003(b)(8). Thus, it was entirely reasonable for the military judge to conclude that less confinement was necessary if the military judge thought Appellant needed only a modicum of specific deterrence and did not present a risk to public safety. That alone is not inconsistent with a separate conclusion by the military judge that the nature of the misconduct (including consideration of the palpable victim impact) warranted punitive separation. In short, the fact that the military judge extended leniency to Appellant as to confinement does not *ipso facto* mean that a bad-conduct discharge would be inappropriate for the same convicted offenses.

Here the Appellant's convicted misconduct involved him physically foisting himself on a fellow Airman and friend in her home without her consent. His conduct evidently caused palpable emotional impact on IC who now finds herself mistrusting of men generally. The fact that assault consummated by a battery is categorically a less severe offense than abusive sexual contact (in terms of maximum punishments available) does not remove it from the realm of "bad conduct" subject to a punitive discharge in an appropriate case. We find nothing inappropriately severe in the imposition of this authorized punishment in this case.[6]

In the end, having considered all the evidence in the record, and the interest in uniformity and evenhandedness of sentencing decisions generally, we

---

[6] Finally, we find nothing in the record to support Appellant's argument that the military judge must have impermissibly considered the Article 120, UCMJ, abusive sexual contact specifications which the convening authority agreed to withdraw and dismiss as a condition of the plea agreement. *See United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) (citations omitted) ("As the sentencing authority, a military judge is presumed to know the law and apply it correctly absent clear evidence to the contrary.").

are convinced that no component of Appellant's sentence, nor his sentence as a whole, was inappropriately severe.

## B. Post-trial Processing

### 1. Law

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Miller*, 82 M.J. 204, 207 (C.A.A.F. 2022) (citation omitted). Because they are matters of law, we also review interpretations of the Rules for Courts-Martial de novo. *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008) (citation omitted).

"In a case with a crime victim, after a sentence is announced in a court-martial any crime victim of an offense may submit matters to the convening authority for consideration in the exercise of the convening authority's powers under R.C.M. 1109 or 1110." R.C.M. 1106A(a). "The convening authority shall ensure any matters submitted by a crime victim under this subsection be provided to the accused as soon as practicable." R.C.M. 1106A(c)(3).

If a crime victim submits matters under R.C.M. 1106A, an accused is entitled to both notice of and an opportunity to be heard as to those matters. *See* R.C.M. 1106(d)(3) ("[T]he accused shall have five days from receipt of [victim] matters to submit any matters in rebuttal."). "Before taking or declining to take any action on the sentence under this rule, the convening authority shall consider matters timely submitted under R.C.M. 1106 and 1106A, if any, by the accused and any crime victim." R.C.M. 1109(d)(3)(A). A convening authority "may not consider matters adverse to the accused without providing the accused an opportunity to respond." R.C.M. 1106A(c)(2)(B), Discussion (citation omitted).

R.C.M. 1104(b)(1)(E) authorizes the filing of post-trial motions "alleg[ing] error in the post-trial processing of the court-martial." The rule also requires a party to file any such motion within five days of receiving the convening authority's action. R.C.M. 1104(b)(2)(B). Failure to file such a motion forfeits that issue on appeal, rendering it reviewable only for plain error. *Miller*, 82 M.J. at 207 n.3. "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id.* at 207–08 (citation omitted). An appellant must prevail on all three prongs to merit relief.

In accessing potential prejudice for alleged post-trial processing errors, we consider whether Appellant has made a "colorable showing of possible prejudice" given the inherently discretionary nature of the convening authority's clemency decision. *United States v. Lowe*, 58 M.J. 261, 263 (C.A.A.F. 2003). As part of making a colorable showing of possible prejudice, an appellant must

"stat[e] what, if anything, would have been submitted to deny, counter, or explain the new matter." *United States v. Valentin-Andino*, 83 M.J. 537, 542 (A.F. Ct. Crim. App. 2023) (quoting *United States v. Chatman*, 46 M.J. 321, 323 (C.A.A.F. 1997))**.**

### 2. Analysis

We assume without deciding that the absence of a receipt for victim matters by Appellant himself evidences a failure by the convening authority to fulfill his responsibility under R.C.M. 1106A(c)(3) to ensure those victim matters were directly provided to Appellant.[7] Despite the absence of any post-trial motion from Capt TW raising the lack of service of victim matters directly upon Appellant, we will assume without deciding that Appellant did not forfeit this issue because the convening authority decision on action was not served upon trial defense counsel until *after* the execution of the entry of judgment in this case.[8] That service date is significant because the convening authority decision

---

[7] We leave for another day the question of whether service upon defense counsel may satisfy the convening authority's obligation under R.C.M. 1106A(c)(3) to ensure victim matters are "provided to the accused as soon as practicable." We also note that Appellant has raised no claim of ineffective assistance of counsel against Capt TW that he either failed to inform Appellant as to the victim matters or to submit any rebuttal thereto. Under such circumstances, we ordinarily apply a *presumption of regularity* to trial defense counsel's post-trial representation of Appellant. *See United States v. Titsworth*, 13 M.J. 147, 149 (C.M.A. 1982). That is, we presume that, once served, Capt TW would have fulfilled his ethical obligations of communication with his client, duly shared those victim matters with Appellant, and sought his input as to whether to submit any rebuttal. *See id.*; *United States v. Lichtsinn,* 32 M.J. 898, 900 (A.F.C.M.R. 1991) (citing *United States v. Diaz-Carrero*, 31 M.J. 920, 921 (A.C.M.R. 1990) ("We also apply the presumption of regularity to defense counsel, confident that they will discharge their legal and ethical duties and that they will ensure that any submission to the convening authority, or any decision not to submit matters, is the product of meaningful dialogue between lawyer and client and representative of the client's wishes."). Indeed, R.C.M. 1111(f)(2) already imposes a similar obligation on defense counsel in relation to the entry of judgment, whereby "defense counsel shall, by expeditious means, provide the accused with a copy [of the entry of judgment]," as do Department of the Air Force regulations in relation to the convening authority decision on action memorandum. Department of the Air Force Instruction (DAFI) 51-201, *Administration of Military Justice* ¶ 20.26 (24 Jan. 2024, as amended by DAFI 51-201, 9 Apr. 2024).

[8] *See United States v. Haynes*, No. ACM 40306, 2023 CCA LEXIS 361, at *8–9 (A.F. Ct. Crim. App. 30 Aug. 2023) (unpub. op.) (declining to consider defense counsel's failure to file an R.C.M. 1104(b) post-trial motion as a forfeiture because the Government served victim matters only on trial defense counsel and not the appellant); *see also* Uniform Rules of Practice Before Department of the Air Force Courts-Martial Rule

on action memorandum arguably would have been the first explicit indication to trial defense counsel that the convening authority took action prior to (the purported lack of) direct service of the post-trial crime victim matters on Appellant.

Ultimately, whether we treat this issue as preserved or not is immaterial to Appellant's entitlement to relief. In either event, there is no evidence in the record that Appellant suffered even a colorable showing of possible prejudice. Appellant has not made any assertion supported by evidence in the record or post-trial affidavit or declaration of what, if anything, he would have submitted had he been given the opportunity to respond to IC's R.C.M. 1106A submission. *See Valentin-Andino*, 83 M.J. at 542 (citation omitted); s*ee also United States v. Wheelus*, 49 M.J. 283, 290 n.6 (C.A.A.F. 1998) ("[A]ppellant suggests nothing of apparent consequence that might have been mentioned to the convening authority that was not already well articulated in the combined submissions to the convening authority by appellant and trial defense counsel."). Here, those victim matters provided no new information to the convening authority as they were identical to the victim unsworn statement presented during presentencing at Appellant's trial—information known to Appellant and to Capt TW at the time they submitted Appellant's clemency matters. Under the circumstances, we find no colorable showing of prejudice from the presumed Government error in neglecting to ensure service of the victim's matters directly on Appellant prior to the convening authority's action.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

10.1 (27 Mar. 2023) ("[T]he military judge will review and sign the [e]ntry of [j]udgment as soon as practicable but not earlier than five (5) calendar days after service of the convening authority decision on action upon the Accused.").